RUTH B. RAINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 86469.   Promulgated November 18, 1938.

*George E. H. Goodner, Esq.,* and *Clair M. Senior, Esq.,* for the petitioner.

*R. P. Hertzog, Esq.,* for the respondent.

OPINION.

HILL: On July 30, 1929, the directors of the Columbia Steel Corporation formally approved an option, theretofore executed on July 16, granting to petitioner's husband the right to purchase from the corporation at any time within three years 20,000 shares of its common capital stock at $9 a share. The stock was then worth $16 a share. Petitioner and her husband at that time were residing in California, a community property state. The option was given to petitioner's husband as compensation for services rendered in 1919–1922. Most, if not all, of the services mentioned were rendered prior to the time petitioner and her husband were married, and if any of such services were rendered after the marriage, it was while they were residing in Utah, a noncommunity property state.

Respondent held that, since petitioner and her husband were then residing in a community property state, the option constituted community income at the time of its receipt in July 1929, to the extent of its fair market value, which was determined to be $140,000, measured by the difference between the option price of $9 a share and the market price of $16 a share, or $7 a share on 20,000 shares of stock. Accordingly, respondent taxed to petitioner, as her portion of such community income one-half of the total, or $70,000. In computing the deficiency the respondent ignored the transaction between petitioner and her husband under the agreement of November 7, 1929, on the theory that, since the option was community property, petitioner thereby acquired nothing which she did not already own.

Petitioner asserts that respondent's action is erroneous for the reasons (1) that the mere receipt of the option by petitioner's husband did not constitute income to any one; (2) that the option was the separate property of petitioner's husband, since they were not domiciled in a community property state when the services were rendered; and (3) that when she acquired a one-half interest in the option as her separate property on November 7, 1929, in exchange for notes and accounts which had cost her $62,764.76 and exercised the option next day, receiving 10,000 shares of stock upon the payment of $90,000, she not only realized no gain from the transaction but sustained a loss.

The questions for decision are:

1. Was the option granted to petitioner's husband, L. F. Rains, community property?

2. If the option was community property, did income result to the community from its mere acquisition or only upon its exercise?

3. Did petitioner realize a gain or loss in the taxable year in the exchange of property for a right under the option?

If question No. 1 should be answered in the negative, question No. 2 becomes unimportant to a decision of the issues in this proceeding, since the income of L. F. Rains is not involved herein. We shall first consider question No. 1, namely, whether the option was community property.

If the right under the option had its inception within the period of the domicile of L. F. Rains and petitioner in California the option was community property; otherwise, it was the separate property of L. F. Rains. Petitioner contends that such right had its inception in the performance of the services for which compensation was provided by the option. Respondent contends that the inception of the right lay in the granting of the option, or, in other words, that the right to such compensation was created by the option and that theretofore there was no such right, incipient or otherwise. Admittedly the option was granted pursuant to an arrangement to compensate L. F. Rains for services rendered by him to the Columbia Steel Corporation at a time prior to the intermarriage of L. F. Rains and petitioner, or at least prior to their residence in a community property state. Such services constituted the consideration and the only consideration for the option. From the time of the organization of the Columbia Steel Corporation it appears to have been understood between L. F. Rains and the other directors thereof, as individuals, that he was to have an additional amount of stock in the corporation as compensation for such services, but that prior to the granting of the option there was no action by the corporation to this effect. The form and amount of compensation which he claimed were not

determined prior to the granting of the option and prior to that event he had no legally enforceable right to such compensation. The directors of the corporation, recognizing the value of his services to the corporation and that he had not been adequately compensated therefor, gave Rains the option, thereby determining the method of compensating Rains for such services and binding the corporation to the terms thereof. Thus what had been previously a mere moral right to compensation was made a legal right. But this action did not change the fact that the consideration for the option was the performance of services by Rains in the period 1919-1922 and that hence the inception of the right under the option was the performance of such services while Rains was domiciled in Utah, a noncommunity property state. The right to the compensation provided by the option being separate property of Rains in its inception, the compensation when received was likewise separate property.

If we should agree with respondent's contention and hold that the granting of the option was the inception of the right to compensation provided thereunder, then, it must also be held that such right did not flow from the performance of such services and consequently there was no valuable consideration for the option and that it was a gift to Rains. In such event the option and the compensation provided thereunder would be the separate property of Rains. It is unnecessary to cite authority to the point that under the law of every community property state a gift to one of the spouses of a marital community is the separate property of such spouse. Either the option was given to L. F. Rains in consideration of services rendered in 1919-1922 while he was domiciled in the State of Utah, or it was given without valuable consideration and was therefore a gift to him. In either event the option was the separate property of L. F. Rains, since the inception of a property right fixes the character of the title thereto. Cf. *W. L. Honnold*, 36 B. T. A. 1190; *Sara R. Preston*, 35 B. T. A. 312; *Albert J. Houston*, 31 B. T. A. 188; *Gouverneur Morris*, 31 B. T. A. 178; *Helen N. Winchester, Administratrix*, 27 B. T. A. 798; *John M. King*, 26 B. T. A. 1158; affd., 69 Fed. (2d) 639.

We hold, therefore, that the option was the separate property of L. F. Rains and not the community property of himself and petitioner. In view of this holding it is unnecessary to consider question No. 2, hereinabove stated, since the petitioner, not having any community interest in the option, received no income as a result either from the mere acquisition of the option by L. F. Rains or from its exercise in the purchase of corporation stock.

But our holding that petitioner realized no income from the acquisition of the option by her husband, L. F. Rains, or from the purchase of stock under the option, does not dispose of the issue affecting the

tax liability of petitioner herein. We still have to consider question No. 3 above stated, namely, whether petitioner realized a gain or loss in the taxable year in the exchange of property for a right under the option. The latter question is one apart from the acquisition of the option by L. F. Rains and the purchase of the stock thereunder. Petitioner, in acquiring assignment of an interest in her husband's option, exchanged property for property and it is upon that transaction that we must redetermine the deficiency determined against her by respondent.

Petitioner exchanged property which cost her $62,764.76 for a right under her husband's option to purchase 10,000 shares of the common stock of the Columbia Steel Corporation at the price of $90,000. However, the cost of the property which she exchanged for the right under the option must be reduced by the amount of $7,099.24 to arrive at the basis to be used in computing her gain or loss, for the reason that the record discloses that the property, consisting of notes and accounts, transferred by petitioner to her husband under the agreement, as consideration for one-half interest in the option, included $7,099.24 representing royalties which accrued to petitioner in 1928 and were not reported by her as income for that year. The correct basis, therefore, for computing petitioner's gain or loss on the transaction is $55,665.52. Cf. *Pearl A. Long*, 35 B. T. A. 479; affd., 96 Fed. (2d) 270; *George N. Crouse*, 26 B. T. A. 477; *Searles Real Estate Trust*, 25 B. T. A. 1115; *Henry V. Poor*, 11 B. T. A. 781; affd., 30 Fed. (2d) 1019; *Bothwell v. Commissioner*, 77 Fed. (2d) 35; *Larkin v. United States*, 78 Fed. (2d) 951.

The cases last above cited are predicated upon the general principle that a taxpayer can not take as a deduction the loss of a gain which has not been reflected in income. For example, in the *Poor* case, *supra*, the taxpayer deducted from gross income as a bad debt the full amount of a judgment embracing $484.21 interest which had at no time been included in his reported income. The Board applied the principle stated, notwithstanding the taxpayer kept his books on a cash receipts and disbursements basis, and the uncollected interest, therefore, was properly excluded from his gross income.

In the instant case, petitioner is not seeking to deduct directly from gross income the amount of the uncollected royalties, and if such a deduction were claimed, it would not be allowable under the doctrine referred to. However, petitioner is attempting to attain the same result by including the amount of the royalties in the basis to be deducted in computing gain or loss from the exchange of her receivables for an interest in the husband's option. If so included, such amount would reduce the taxable gain or increase the deductible loss.

Substantially the same principle has been applied and the same results obtained in analogous situations based upon slightly different reasoning. In *William Merriam Crane*, 27 B. T. A. 360; affd., 68 Fed. (2d) 640, the petitioner owned certain realty which had been leased to an insurance company. The lessee made improvements of substantial value in 1920 which were to revert to the lessor upon termination of the lease. Petitioner sold the property in 1927, and contended that in computing gain or loss on the sale he was entitled to deduct the depreciated cost of the improvements, although he had never reported any part of such cost or value in his income. We denied the deduction on the ground that an income item is not, for tax purposes, converted into a capital asset, having a cost basis, until it is first taken into income. In our opinion we said:

Furthermore, he [taxpayer] is not in a position to charge himself with any amount of increase in capital value as he might have been had he first taken some part of the increase into income. Prior to the sale he never recognized the receipt of any benefit from the expenditures made by his lessee. Until he has recognized the receipt of the asset, he can not set up capital value for it.

In *Commissioner* v. *Farren*, 82 Fed. (2d) 141, the taxpayers in 1918 each received shares of stock in an oil company as compensation for services rendered. Although taxable as income for 1918, no return was made for that year, on the theory that no income was derived until the stock was sold. The stock was sold in 1926, and the taxpayers contended they were entitled to deduct the value of the stock when acquired, notwithstanding such value had not been returned as income. The deduction was disallowed.

In *Long* v. *Commissioner*, 96 Fed. (2d) 270, affirming 35 B. T. A. 479, the court held that the worthless obligation of a husband to pay alimony was not deductible as a bad debt, since there was no cost basis of the debt sought to be deducted.

In *Alamo National Bank of San Antonio, Executor*, 36 B. T. A. 402; affd., 95 Fed. (2d) 622, the petitioners were the sole stockholders of a corporation from which they received a Coca-Cola franchise in 1921 as a liquidating dividend, but did not include in their income for that year any amount on account of the receipt of the franchise. They sold the franchise in 1931, and we held they were not entitled to deduct any value for the franchise as a basis for computing gain from its sale.

Petitioner acquired her option right on November 7, 1929, and on November 8, 1929, purchased 10,000 shares of Columbia Steel Corporation stock for $90,000 in the exercise of such right. Respondent contends that the contract of November 7, 1929, between petitioner and her husband was effective as of October 31, 1929, and that the

latter date should be taken as the basic date for computing gain or loss. If such latter date be taken as the effective date of such contract, petitioner derived gain from the exchange ,whereas, if November 7, 1929, be taken as the effective date of the contract, she sustained a loss. Such difference in results flows from the fact that there was a considerable fluctuation in the market value of the stock between the respective dates. We think the date last mentioned must be used as the basic date. The contract was executed on November 7, 1929, and did not provide that it should be effective as of October 31, 1929, but only that the *amounts* of the various notes and accounts covered by the agreement between petitioner and her husband should be determined as of the preceding October 31. Such provisions did not fix the effective date of the contract, but merely provided a method for computing the amount of the consideration moving from petitioner to her husband.

The gain or loss realized by petitioner in the transaction is the difference between the allowable cost basis of the property exchanged for the right under the option and the fair market value of that right on November 7, 1929. Whether she realized gain, or loss depends on whether the allowable cost basis was greater or less than such value. The only evidence in the record from which we may determine the fair market value of the right which petitioner acquired is that establishing the purchase price of $90,000 paid by her under the option for the stock and the market value of the stock on July 16 and 31, October 30 and 31, and November 8, 1929. Only "over the counter" sales prices of the stock are available and they varied from $15¾ a share on July 16 to $16 on July 31, October 30 and 31, and $14, $13⅝ and $13¾ high, low and close, respectively, on November 8, 1929. We have found that the fair market value of the stock on November 7, 1929, was $13¾ a share, or $137,500 for 10,000 shares. The evidence does not disclose any sales or quotations of the stock on November 7, 1929, but the value last above stated is indicated as the value of the stock on November 7, 1929, by the best evidence before us on this point, it being the value established by sales of the stock on the day immediately following the acquisition by petitioner of an interest in the option.

The parties hereto have proceeded on the theory that the fair market value of the right under the option is the difference between the amount to be paid for the purchase of the stock under the option and the fair market value of the stock. In the absence of evidence on this point other than that above indicated, and in view of the parties' attitude relative thereto, we accept, for the purposes of this case, such measure of value. Therefore, the market value of the right acquired by petitioner in the option of L. F. Rains was $47,500,

the difference between $90,000, the purchase price of 10,000 shares of such stock under the option, and $137,500, the fair market value of the stock on November 7, 1929. Thus we find and hold that petitioner, on November 7, 1929, exchanged property having an allowable cost basis of $55,665.52 for an option right of the fair market value of $47,500 and thereby sustained a loss in the amount of $8,165.52.

Respondent contends that petitioner's notes and accounts were not worth face value at the time of the exchange for the option, but that fact, if true, is immaterial. Petitioner is nevertheless entitled, in computing gain or loss on the exchange, to use the adjusted cost basis, which is clearly established by the record.

The deficiency will be recomputed by eliminating from petitioner's gross income the amount of $70,000 included therein by respondent, and by deducting from gross income the above loss of $8,165.52.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

ARUNDELL, TURNER, TYSON, and DISNEY concur only in the result.