Randolph and Gladys M. Murdaugh v. Commissioner. Randolph Murdaugh v. Commissioner.
Murdaugh v. Commissioner
Docket Nos. 45495, 45496.
United States Tax Court
T.C. Memo 1955-245; 1955 Tax Ct. Memo LEXIS 91; 14 T.C.M. (CCH) 974; T.C.M. (RIA) 55245; August 31, 1955
*91 Henry H. Edens, Esq., and Henry Hammer, Esq., for the petitioners. Ralph V. Bradbury, Jr., Esq., and George W. Calvert, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: These consolidated proceedings involve deficiencies in income taxes and penalties, under section 293(b), Internal Revenue Code of 1939, as follows: Amount of
Deficiency
Income
Petitioner
Year
Tax
Penalty
Randolph Murdaugh
1945
$9,467.46
$4,733.73
Randolph Murdaugh
1946
1,455.90
727.95
Randolph Murdaugh
1947
2,107.65
1,053.83
Randolph Murdaugh
1948
2,268.84
1,134.42
Randolph and Gladys
M. Murdaugh
1949
693.16
346.58 The questions presented are (1) whether respondent correctly determined the income from legal fees received by Randolph Murdaugh in 1945 and 1949; (2) whether amounts received by Randolp Murdaugh from the State of South Carolina as travel allowances were properly included in his income in the years received; (3) whether and to what extent a partnership of which Randolph Murdaugh was a member sustained net operating losses during 1947, 1948 and 1949 and to what extent a loss, if any, from *92 1947 operations may be carried back to 1945; (4) whether Randolph Murdaugh is entitled to deduct farm losses, if any, in 1946, 1947 and 1948; a casualty loss, if any, in 1949; and a loss, if any, on the sale of a truck in 1949; and () whether fraud penalties were properly imposed for each of the years in controversy, and, if not, whether the deficiency for 1945 is barred by the statute of limitations. The parties agree on the amount expended for medical purposes in 1946, 1947 and 1948 and that the deductions therefor can be determined after the correct adjusted gross income for those years has been determined. Petitioner no longer challenges the determination of income from legal fees for 1947 and 1948, and respondent, by an amended answer, pleads in the alternative an increased deficiency in 1949 if his determination of income from legal fees in 1945 is disapproved. Findings of Fact Randolph Murdaugh, hereafter called petitioner, and his wife, Gladys M. Murdaugh, reside at Hampton, South Carolina. Petitioner filed separate individual income tax returns on the cash basis for the calendar years 1945, 1946, 1947 and 1948, and he and his wife filed a joint income tax return on the *93 cash basis for the calendar year 1949 with the collector of internal revenue for the district of South Carolina. Petitioner, who was 39 years old at the date of the hearing, is the son of a lawyer who carried on the private practice of law and acted as state solicitor in South Carolina for many years prior to his death in July 1940. Petitioner attended the University of South Carolina from 1932 to 1938, 3 years of which was in undergraduate school and 3 years in law school. Upon graduating from law school in 1938 he worked in his father's law office. Since about the middle of 1940 he has been carrying on the private practice of law and acting as solicitor for the Fourteenth Judicial Circuit consisting of five counties in South Carolina. His private law practice is of a general nature and includes the preparation of Federal income tax returns. He handled many injury and workmen's compensation cases on a contingent fee basis which was usually 50 per cent of the settlement. Petitioner compiled the information and prepared the returns of himself and his wife for each of the years involved. He deducted the expenses attributable to a particular client before entering an amount as his *94 total receipts from his law practice. At the time he prepared his returns, he did not have or prepare a list showing the names of his clients or the fee he was reporting on the return; he compiled such information by reference to his files. He had a fairly good record of his income and disbursements in his law profession for 1946, but not for the other years. He maintained his records in the same way during each of the years involved. There was no cash receipts and disbursements book. He, or someone in his office, made a notation, on the case file or a piece of memorandum paper, of the expenses he had incurred for the client. There were some check stubs, canceled checks, bank statements, and deposit slips, but such records were incomplete as to continuity. In examining petitioner's income from legal fees in 1945, 1947, 1948 and 1949, respondent's agents asked for fee lists giving the name of each client and the fee received. Petitioner reviewed his files and prepared and submitted lists purporting to show fees for 1945, 1947 and 1949 but, although repeatedly requested to do so, never submitted a list for 1948. An attempt was made to reconcile the figures on the lists with petitioner's *95 check stubs, deposit slips, and other records. Where discrepancies were found or where evidence indicated that there may have been other clients during the year, further investigation was made. Also a complete fee list had to be made for 1948. Investigation was made into the courthouse records, bank records and the records of the State Industrial Commission in an effort to determine other cases handled by petitioner. Where there were discrepancies, the agents contacted the clients themselves in order to determine the fees they paid. If the client could not be found and the discrepancy was large, the agents contacted petitioner and told him what they had found to be his fee. After completing their investigation, the agents compiled fee lists for 1945, 1947, 1948 and 1949 upon which they entered petitioner's fee after the allowance of any expense he had incurred that was attributable to the specific clients on the list. Petitioner reported adjusted fees of $10,844.31 on his 1945 tax return. Petitioner received a fee of $5,000 which he included in his reported income in 1945 for legal services rendered Ruth Cram in connection with a separation suit and other matters handled for her. *96 A dispute arose in respect to the fee and he paid $6,000 to Mrs. Cram out of other receipts held by him, for which respondent allowed a deduction in determining the deficiency for 1949. After deducting any expenses attributable to a specific client, petitioner received in 1947 fees totaling $12,202.98, and in 1948 fees totaling $15,985.36. He reported adjusted fees of $8,743 on his 1947 return and $8,253 on his 1948 return. Petitioner reported adjusted fees of $13,477.79 on his 1949 return. In 1949, petitioner received adjusted fees of $15,985.94. Petitioner received travel allowances from the State of South Carolina in connection with his duties as county solicitor in 1946, 1947, 1948 and 1949 in the respective amounts of $1,425, $1,047.50, $1,383 and $1,245. The payments were made on a per diem basis plus a mileage allowance. He did not include any of these amounts in gross income for any of the years. He deducted travel expenses on his returns for these years in the respective amounts of $2,761.98, $2,401.32, $1,813.04 and $2,283.39 for unreimbursed expenses incurred by him in connection with his duties as state solicitor for his counties in South Carolina. Petitioner received *97 $296.82 in interest in 1946. He reported $130.32 of this amount as dividends in 1946 but did not report the remaining $166.50 in any manner. In 1948 he understated his dividends received by $86.20, and his interest received by $114. In 1949 he and his wife understated their dividends received by $127.32, and their interest received by $229.86. In 1946, 1947, 1948 and 1949 petitioner was a partner in Hampton Furniture Manufacturing Company. Petitioner owned and operated a farm. In May 1948 petitioner purchased a boat which, together with improvements, cost not less than $1,500. This boat was completely destroyed by an abnormal tide and attempted salvage operations in 1949, and in the return for that year petitioner claimed a loss deduction of $1,500. A truck was purchased in the spring of 1949. This truck was encumbered by a lien. Petitioner's Federal income tax returns for 1945 through 1948 disclosed income as follows: 1945
State of South Carolina
$ 4,500.00
Dividends and Interest
672.91
Income from Profession
Total Receipts
$10,844.31
Business Deductions
6,951.40
3,892.91
Farm Loss
(1,826.50)
Adjusted Gross Income
$ 7,239.32
Less: Itemized Deductions
1,510.42
Net Income
$ 5,728.90
1946
State of South Carolina
$ 4,500.00
Dividends
509.77
Income from Profession
Total Receipts
$10,437.41
Business Deductions
7,531.08
2,906.33
Income from Hampton Furn. Mfg.
Co.
709.21
Farm Loss
(1,835.02)
Adjusted Gross Income
$ 6,790.29
Less: Itemized Deductions
1,662.36
Net Income
$ 5,127.93
1947
State of South Carolina
$ 4,500.00
Dividends
886.66
Interest
225.00
Loss - Hampton Furn. Mfg. Co.
(2,001.80)
Loss - Farm
(2,076.27)
Income from Profession
Total Receipts
$ 8,743.00
Business Deductions
6,068.26
2,674.74
Capital Gain
50.00
Adjusted Gross Income
$ 4,258.33
Less: Itemized Deductions
3,011.88
Net Income
$ 1,246.45
1948
State of South Carolina
$ 4,500.00
Dividends
985.00
Interest
100.00
Loss - Hampton Furn. Mfg. Co.
(6,000.00)
Loss - Farm
( 375.00)
Income from Profession
Total Receipts
$ 8,253.00
Business Deductions
7,616.65
636.35
Adjusted Gross Income (Loss)
($ 153.65)
Less: Itemized Deductions
2,884.27
Net Income (Loss)
($ 3,037.92)
*98 His and his wife's return for 1949 disclosed income as follows: 1949
State of South Carolina
$ 4,950.00
National Guard
5.00
Dividends
512.00
Interest
187.00
Rent
360.00
Income from Profession
Total Receipts
$13,477.79
Business Deductions
6,870.67
6,607.12
Capital Loss
( 1,000.00)
Loss - Hampton Furn. Mfg. Co.
(20,000.00)
Adjusted Gross Income
($ 8,378.38)
Less: Itemized Deductions
( 6,185.17)
Net Income (Loss)
($14,563.55) Respondent, in the statutory notice, determined petitioner's taxable net income for 1945, 1946, 1947 and 1948 as follows: 1945
Net Income per Return
$ 5,728.90
Unallowable Deductions and Addi-
tional Income
(a) Income from Profession
20,116.00
Net Income Adjusted
$25,844.90
1946
Net Income per Return
$ 5,127.93
Unallowable Deductions
and Additional Income
(a) Interest
$ 296.82
(b) Business Income
855.07
(c) Partnership Income
2,382.26
(d) Farm Loss
1,835.02
(e) Medical Expenses
261.36
5,630.53
$10,758.46
Nontaxable Income and
Additional Deductions
(f) Dividends
$ 140.32
(g) Contributions
30.00
(h) Interest
23.75
(i) Taxes
91.87
285.94
Net Income Adjusted
$10,472.52
1947
Net Income per Return
$ 1,246.45
Unallowable Deductions
and Additional Income
(a) Business Income
$ 4,507.48
(b) Partnership Income
2,001.80
(c) Farm Loss
2,076.27
(d) Medical Expenses
429.28
9,014.83
$10,261.28
Nontaxable Income and Additional
Deductions
(e) Contributions
.75
Net Income Adjusted
$10,260.53
1948
Adjusted Gross Income (Loss) per
Return
($ 153.65)
Deductions per Return
2,884.27
Net Income (Loss) per Return
($ 3,037.92)
Unallowable Deductions
and Additional Income
(a) Dividends
$ 86.20
(b) Interest
114.00
(c) Business Income
9,115.36
(d) Partnership Loss
6,000.00
(e) Farm Loss
375.00
(f) Medical Expenses
776.85
16,467.41
Net Income Adjusted
$13,429.49
*99 Respondent, in the statutory notice, determined petitioner's and his wife's taxable net income for 1949 as follows: 1949
Adjusted Gross Income (Loss) per
Return
($ 8,378.38)
Deductions per Return
6,185.17
Net Income (Loss) per Return
($14,563.55)
Unallowable Deductions
and Additional Income
(a) Dividends
$ 127.32
(b) Interest
229.86
(c) Partnership Loss
20,000.00
(d) Taxes
1,025.00
(e) Casualty Loss
1,500.00
(f) Miscellaneous De-
ductions
863.71
23,745.89
$ 9,182.34
Nontaxable Income and
Additional Deductions
(g) Business Income
$ 2,352.10
(h) Error on Return
.50
(i) Error on Return
879.07
3,231.67
Net Income Adjusted
$ 5,950.67
No part of any of the deficiencies determined against petitioners for any of the taxable years was due to fraud with intent to evade tax. Opinion Respondent determined fraud penalties for each of the years involved, the determination with respect to 1945 having added significance because otherwise that year is concededly barred by the statute of limitations. He predicates these determinations on understatements of some fees, and omissions of interest, dividends, certain fees and travel *100 allowances, as well as on petitioner's training and experience in the law. With the exception of this last argument, respondent's case against petitioner is thus grounded upon unfavorable inferences drawn from substantial understatements of income. But this factor alone does not convince us, under the present circumstances, of the fraud which respondent has the burden of proving. See James Nicholson, 32 B.T.A. 977, affd. (C.A. 8) 90 Fed. (2d) 978. This is a different record from that in such cases as Charles A. Rogers, 38 B.T.A. 16, affd. (C.A. 6) 111 Fed. (2d) 987, where the circumstances justified the assumption that the taxpayers, at the time the returns were made, knew that the omitted amounts constituted taxable income. The evidence shows that petitioner reported net amounts rather than gross fees, after making deductions considered appropriate for expenses incurred while earning them. He does not now attempt to defend his method of reporting; rather, he claims his practise of keeping records resulted in the present understatements and omissions. He kept no cash receipts and disbursements books, but depended largely upon *101 notations made in his case files to reconstruct receipts and disbursements relative to fees. At the end of each year he attempted to assemble this information and compute his income. His excuse for oversight and inability to explain discrepancies between gross and net fees is predicated partly on the transfer of case files to a "closed file" cabinet. In determining the deficiencies in income tax, respondent did not wholly reject petitioner's accounts. Instead, he attempted to determine from those records and other inquiries what income petitioner had actually received. A revenue agent recalled that petitioner's records of fee income and disbursements for 1946 appeared to be fairly good. In his deficiency notice pertaining to that year, respondent reduced the fee income reported by petitioner. Yet petitioner testified that he kept records in the same manner for all years involved as well as for the 2 preceding years, which were audited without criticism of the record-keeping system. Respondent offered no evidence to rebut this testimony. Under these circumstances petitioner's legal training does not automatically invalidate his explanation of the deficiencies nor carry any implication *102 of a fraudulent purpose. Cf. Leonard B. Willits, 36 B.T.A. 294. Petitioner testified that the omissions of travel allowances resulted from another misconception, that when expenses equal reimbursements received therefor neither need be reported. He also testified that another lawyer had advised him that this procedure was proper. Accepting, as at least plausible, petitioner's unimpeached and unrebutted explanation of the omissions and understatements, cf. Arlette Coat Co., 14 T.C. 751, it may well be that petitioner was grossly negligent. So much he virtually concedes. But however much his method of keeping records and assembling information for his tax returns left [much] to be desired, carelessness is not synonymous with fraud. That must be proved clearly and convincingly. On the record before us respondent has failed to sustain this burden and, accordingly, his determination on this issue is disapproved. Eliminating 1945, which must now be treated as falling under the bar of the statute of limitations, we have incorporated in our findings the best conclusions available to us as to petitioner's actual net income for the remaining years. This includes *103 1946 as to which an apparently half-hearted effort to invoke the statute of limitations on brief must fail for want of proper pleading if for no other reason. United Business Corporation of America, 19 B.T.A. 809, affd. (C.A. 2) 62 Fed. (2d) 754, certiorari denied 290 U.S. 635. For the most part we have found the facts in conformity with respondent's determination. This results to a considerable extent from the onus of the burden of proof which petitioner has found it impossible to rebut. Fees received in 1947 and 1948, for example, are conceded by him to be correct for purposes of this case, there being no means available to him to produce contrary evidence. Nor are we satisfied that petitioner's expenses equaled the allowance made him for that purpose by the State of South Carolina or, in fact, that his total travel expense claimed on the returns and allowed by respondent did not include such items in full. His failure to keep any records leaves us in the position where we cannot say respondent's treatment of the expenditures was erroneous. Cf. Cohan v. Commissioner, (C.A. 2) 39 Fed. (2d) 540. As to one item we are satisfied *104 that petitioner's version is the correct one. Relying on his testimony, we have not included the disputed portion of the Cram fee in amounts received in 1945. This would be immaterial were it not for respondent's action in 1949 in offsetting that part of the sum received against total income for the later year on the theory that return of an income item represents an appropriate deduction. See Ruth B. Rains, 38 B.T.A. 1189; Houbigant, Inc., 31 B.T.A. 954, affirmed per curiam (C.A. 2) 80 Fed. (2d) 1012, certiorari denied 298 U.S. 669; Maurice P. O'Meara, 8 T.C. 622; but cf. Bennet v. Helvering, (C.A. 2) 137 Fed. (2d) 537. By amended pleading, respondent seeks to reverse that action, and in view of petitioner's account of the transaction, which we accept, the item need never have been reported, as in fact it was not and hence its ultimate disbursement to Mrs. Cram should not be offset against 1949 income. Cf. Ross v. Commissioner, (C.A. 1) 169 Fed. (2d) 483. Respondent's adjustment of his determination for 1949, as set forth in his amended answer, is accordingly approved. There is nothing in *105 the record on which we can sustain the claimed losses in the furniture business. The items submitted as operating losses resemble capital items, and in any event the figures are computed in a manner which renders impossible even an approximation of what was the loss for any given year. 1946 is said to have been profitable but by 1949 the business is claimed to have been insolvent. For all that appears, however, it may not have been until 1950 that the true deductible losses occurred. In the same way, the claimed loss on a partnership truck has not been substantiated. On this record the deductions must be disallowed. For similar reasons, a farm loss cannot be allowed. If proper allocations of various expenses were made the figures might indicate that no loss had occurred, or that other business deductions represented a duplication. At any rate, if there were records they were not produced. We have nothing from which we can reconstruct them. As to the casualty loss said to have arisen when petitioner's boat was lost in a storm, however, the evidence appears sufficient, if barely so, to sustain the deduction. The basis has been determined from the evidence and we conclude that this *106 amount as set forth in our findings was a proper deduction. Decisions will be entered under Rule 50.