**STEVENSON–CHISLETT, Inc. v.
UNITED STATES.**

Civ. No. 8117.

United States District Court
W. D. Pennsylvania.

June 28, 1951.

David B. Buerger and Smith, Buchanan
& Ingersoll, all of Pittsburgh, Pa., for
plaintiff.

Theron Lamar Caudle, Asst. Atty. Gen.,
Andrew D. Sharpe, Andrew F. Oehmann,

Sp. Assts. to Atty. Gen., Edward C. Boyle, U. S. Atty., Pittsburgh, Pa., for defendant.

CLARY, District Judge.

### Sur Pleadings and Proof

This is an action instituted by plaintiff corporation under Section 1346(a)(1) of the Judicial Code, 28 U.S.C. § 1346(a)(1), to recover the sum of $3,942.94 paid for income taxes for the calendar year 1945. From pleadings and proof I make the following

### Findings of Fact

1. Stevenson-Chislett, Inc., a corporation and the plaintiff herein, filed its Federal Income Tax Return for the calendar year 1945 with the Collector of Internal Revenue at Pittsburgh, Pennsylvania, on March 15, 1946, and it paid to him the income tax shown due on the return in the amount of $3,942.94 in installments as follows:

| April 3, 1946 | $ 985.74 |
| June 24, 1946 | 985.74 |
| September 25, 1946 | 985.73 |
| December 17, 1946 | 985.73 |
| | $3,942.94 |

No part of the said amount has ever been refunded or in any manner repaid.

2. On March 15, 1949, plaintiff filed with the aforesaid Collector a claim for refund of 1945 income tax, in the amount of $3,492.94, on the ground that plaintiff had sustained a loss by embezzlement, in the amount of $20,925.20, which was discovered during 1945; that said loss was not compensated for by insurance or otherwise; and that said loss had not been reflected in its 1945 return. The Commissioner of Internal Revenue had rendered no decision on the claim for refund when this action was commenced September 21, 1950.

3. Early in 1945, during an audit of plaintiff's books, a discrepancy of $24,135.14, as of December 31, 1944, was discovered between the accounts receivable control account in the general ledger and the total of the individual accounts receivable. Of this amount, $16,882.09 had been posted during October, 1944, as credits to the accounts receivable control account with no corresponding bank deposit. Later investigation determined that the exact amount of the discrepancy between the individual accounts receivable in the accounts receivable ledger and the accounts receivable control account in the general ledger as of December 31, 1944, was $21,675.37.

4. Investigation revealed that the cashier-bookkeeper over a period of several years had manipulated the books and records of the plaintiff for the purpose of covering up cash shortages by accumulating for several months credit slips of individual accounts receivable accounts. Credit slips were posted in later months and there were usually several months of credit slips unposted to the accounts receivable control account in the general ledger.

5. The difference in the two accounts, $21,675.37, represented amounts embezzled from the plaintiff by a person or persons unknown. The said funds were not taken at one time but represented a succession of embezzlements covering an unascertained number of years. Because of the manipulation of the books and records by the cashier-bookkeeper, aided and abetted by an officer of the corporation, and the silence of other employees who knew of or suspected the manipulation, the responsible officers of the corporation did not discover the embezzlement and loss until 1945 when an audit and investigation disclosed the cash shortage.

6. The loss by embezzlement was not compensated for by insurance or otherwise.

7. In view of the series of embezzlements, the nature of the records available and the reluctance to cooperate on the part of the persons involved or suspected, it was a practical impossibility to ascertain the exact year or years in which the succession of shortages occurred.

8. An attempt to segregate the exact year or years in which such shortages occurred would have required a very detailed and extensive audit and investiga-

tion with no assurance that such investigation would have disclosed the actual dates of the acts of embezzlement.

9. Plaintiff used reasonable efforts and diligence under the circumstances of this case in attempting to ascertain the times at which the various embezzlements occurred.

10. Plaintiff made reasonable efforts to detect the identity of the guilty party or parties, including, among others, examination of the suspected persons by accountants and lawyers, detailed analyses of the personal bank accounts of suspected persons, and extended attempts to obtain a confession from the person toward whom suspicion most strongly pointed. It was only upon the considered advice of the plaintiff's attorneys that there was not sufficient basis to institute either civil or criminal action under the circumstances that the plaintiff abandoned its attempt to recover the amounts embezzled.

11. The plaintiff failed to deduct the said loss in its computation of net income in its return for the year 1945.

## Discussion

Throughout the trial of the case, and in its brief, the Government has taken issue with the plaintiff on several important facts; that the plaintiff has suffered a loss by embezzlement; that reasonable efforts were made to attempt to place the dates of loss if they did occur; and that the plaintiff made reasonable efforts to determine the identity of, and obtain redress from, the guilty party or parties, if loss occurred.

■ The Government contends in this case that because of one fact elicited in a statement obtained from a witness and introduced in evidence at the trial, namely, that certain of the petty cash funds were used to pay for C. O. D. purchases, the plaintiff has failed to prove embezzlement. I do not so understand the evidence. It appeared clear to me that cash purchases were accounted for and that the amount, $21,675.37, represented unaccounted for shortages.

■ The Government further contends that if funds were embezzled or stolen,

the loss was sustained in 1944 or in prior years to which it should have been apportioned. I agree that the actual thefts occurred in 1944 and prior years, and under ordinary circumstances should have been apportioned to those years. A detailed and extensive audit might have thrown some light upon the period during which the delays in posting took place, but such audit would have required checking with individual grocery store customers. This type of investigation would not only have been burdensome but presented little likelihood of success. Further, it is questionable whether such information would have ascertained the time of the acts of embezzlement. I find that under the circumstances it is not reasonable to require the taxpayer to expend substantial sums on an extensive audit which, at best, had little hope of success in fixing the times of the embezzlements which are the losses here claimed.

■ One contention of the Government has given me considerable concern, and that is its allegation that the plaintiff has failed to make a real effort to force an accounting from the person or persons who, according to the evidence, might have been responsible for the shortage. The plaintiff can only be held to the exercise of reasonable diligence, and in this case I find that plaintiff did in fact exercise that degree of diligence required, by seeking the advice and assistance of competent auditors and attorneys. While Government counsel might disagree with the exercise of judgment by plaintiff's counsel in deciding against prosecution, and while I might likewise disagree, nevertheless, is is peculiarly the province of a lawyer to advise a client in a situation such as is involved in the present case. It is his responsibility to the client to evaluate the available evidence and on the basis of that evidence to properly advise the client as to what can or cannot be legally proved in either a civil or criminal action.

■ The taxpayer was entitled to rely upon the considered judgment and advice of its attorney. It is clear to me from the

record that it gave to its counsel all available data and having done so it was entitled to rely upon counsel's advice that the evidence was insufficient to warrant the institution of either civil or criminal action. The plaintiff, therefore, exercised reasonable diligence in attempting to learn the identity of the guilty person or persons and in attempting to obtain redress.

The section of the Internal Revenue Code under which plaintiff claims the deduction is Section 23(f), 26 U.S.C. § 23(f), which provides as follows:

"§ 23. In computing net income there shall be allowed as deductions:

　　*　　*　　*　　*　　*　　*

"(f) Losses by corporations. In the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise."

There are two apparently conflicting views of the law applicable to the facts as I have found them. The Court of Appeals for the Third Circuit in the case of the First National Bank of Sharon, Pa. v. Heiner, 1933, 66 F.2d 925, held that an embezzlement occurring in a prior year could not be deducted in the year in which it was discovered but must be deducted in the year in which the loss occurred. On the other hand, in the case of Boston Consolidated Gas Company v. Commissioner of Internal Revenue, 1942, 128 F.2d 473, the First Circuit held that the taxpayer could deduct in the year of discovery a loss occasioned by embezzlement of an employee where the actual date of occurrence of each separate act of embezzlement, as in this case, could not be ascertained.

Plaintiff has argued, and very persuasively, for the application of the apparently more liberal rule of the First Circuit. The opinion of Judge Woodbury in the Boston Consolidated Gas Company case stressed the fact that by the last sentence of Article 43–2 of the Treasury Regulation 86 (now Regulation 111, Sec. 29, 43–2), the Treasury Department itself provided that a loss from theft or embezzlement occurring in one year and discovered in another is *ordinarily* deductible for the year in which sustained, thereby impliedly recognizing that extra-

ordinary situations warranted out of ordinary treatment. He further pointed out that while it was not the intent of Congress to permit a taxpayer to take a deduction for a loss in any year that might serve the taxpayer's particular purpose, it nevertheless was not the intent of Congress that such a rule should be inelastically and rigidly applied. He held, therefore, in that case that where a loss by embezzlement is discovered in one year, said loss having occurred in prior years but the dates of the takings of the funds could not be ascertained, that such a situation did not call for the application of the *ordinary* rule but required the application of an extraordinary rule and therefore allowed the deduction in toto for the year in which it was discovered.

Judge Woodbury in his opinion in the Boston Consolidated Gas Company case, 128 F.2d at page 476, regarded the ruling of the Third Circuit in the Sharon Bank case as conflicting with his. I do not agree. As I view the Sharon Bank case, the principal point upon which the case was decided was that an embezzlement may not be treated as a bad debt. A review of the record on appeal in that case reveals that it was decided upon a statement of claim and an affidavit of defense raising questions of law. It, therefore, leaves an area of doubt regarding certain facts of the case. The statement of claim alleged a total embezzlement by a bank employee during the years 1922, 1923, 1924, 1925, 1926, 1927 and 1928 of some $95,360.00 of which sum recovery was had from the defaulting employee and a bonding company of all but $20,000.00, which represented the amount embezzled prior to the coverage date of the bond.

Even after a review of the record on appeal, it is not clear whether the dates of the embezzlements were definitely ascertained. There were several factors, however, indicating that the times of embezzlement were actually known. For example, in the statement of claim it was alleged that $20,000.00 of the amount embezzled had not been recovered from the surety company because the embezzlement of that

amount took place before the coverage date of the bond. This is an indication that the time of loss was known with at least some degree of accuracy. There is a further indication from the opinion of Judge Gibson in the lower Court, 2 F.Supp. 960, that the time of embezzlement was known. He stated, 2 F.Supp. at page 961, " * * * Unfortunately, the period has expired during which an amended return could be filed for the year of the embezzlement * * * ". These two factors indicate that the times of loss were known. If they were, then the rulings in the Sharon Bank and the Boston Consolidated Gas Company cases are not inconsistent. The statement made in the opinions of both the District Court and the Court of Appeals, in the former case, that the deductions for embezzlement loss could be taken only in the year in which the embezzlement took place is, therefore, a statement of the general rule recognized by the First Circuit that ordinarily loss by embezzlement must be deducted in the year in which sustained.

The Court of Appeals for the Third Circuit has not, in my opinion, ruled squarely upon the question whether embezzlement losses, the actual dates of occurrence of which are unknown, are deductible in the year of discovery.

In view of the similarity of facts between the present case and the Boston Consolidated Gas Company case, it appears to me that the holding in that case is the only appellate authority in point on the facts and, therefore, controlling. Therefore, plaintiff's claimed deduction must be allowed and it is entitled to judgment in its favor.

### Conclusions of Law

1. Stevenson-Chislett, Inc., plaintiff herein, prior to the taxable year 1945 sustained an embezzlement or theft loss in the amount of $21,675.37 which loss was discovered during the year 1945.

2. The embezzlement or theft loss, $21,675.37, composed of a series of embezzlements extending over a period of years, the exact dates of each separate act of embezzlement being unknown, is a proper

deduction from gross income by the plaintiff for the taxable year in which discovered, 1945, under the provisions of Section 23(f) of the Internal Revenue Code, 26 U.S.C. § 23(f).

3. Plaintiff is entitled to judgment in the sum of $3,942.94, with interest.

An appropriate order will be entered.