## ALISON *v.* UNITED STATES.

NO. 79.

Argued November 12, 1952.—Decided December 8, 1952.

*Karl E. Weise* argued the cause for Alison in No. 79. With him on the brief was *Paul Kern Hirsch.*

*Hilbert P. Zarky* argued the cause for the United States in Nos. 79 and 80. With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Lyon, Ellis N. Slack* and *Lee A. Jackson.*

*David B. Buerger* argued the cause for Stevenson-Chislett, Inc. in No. 80. With him on the brief was *George M. Heinitsh, Jr.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The questions in these two income tax cases are so much alike that they can be treated in one opinion. Both taxpayers had moneys embezzled by trusted agents and employees. As usual, the defalcations had been going on for many years before they were discovered. On discovery, efforts were made immediately to identify the takers and fix the dates and amounts of the thefts. In the *Alison* case, No. 79, the books revealed the thief and the precise amounts taken each year from 1931 to 1940. In No. 80, *Stevenson-Chislett, Inc.,* the cover-up had been so successful that painstaking investigation failed to reveal who took the funds or the time when the unascertained person or persons took them. Each taxpayer claimed a tax deduction for the year the losses were discovered and their amounts ascertained. The Government objected, claiming that the deduction should have been taken in each of the prior years during which the moneys were being surreptitiously taken. In the *Stevenson-Chislett* case, the District Court held that the uncertain circumstances of the embezzlement entitled the taxpayer to take its losses the year the loss was discovered and the amount ascertained. 98 F. Supp. 252. The District Judge decided the other way in the *Alison* case and denied her declarations. 97 F. Supp. 959. His holding, however, was not in accord with his own views, but was compelled, he thought, by the Third Circuit's decision in

*First National Bank of Sharon, Pa.* v. *Heiner*, 66 F. 2d 925. The Court of Appeals for the Third Circuit certified to us the question of deductibility in both cases. Pursuant to 28 U. S. C. § 1254 (3), we ordered the complete records sent up so that we might decide the entire matters in controversy.

Internal Revenue Code, §§ 23 (e) and (f) authorize deductions for ". . . losses sustained during the taxable year. . . ." The Government reads this section as requiring a taxpayer to take a deduction for loss from embezzlement in the year in which the theft occurs, even though inability to discover in time might completely deprive the taxpayer of the benefit of this statutory deduction. Only at the time the money is stolen, so it is argued, is a loss "sustained." But Treasury practice itself belies this rigid construction. For more than thirty years the Regulations have provided that "A loss from theft or embezzlement occurring in one year and discovered in another is *ordinarily* deductible for the year in which sustained." 26 CFR § 29.43–2. (Emphasis supplied.) Information contained in a letter from the Commissioner attached as an appendix to the Government's brief cites many instances in which the Treasury has allowed deductions for embezzlement losses in years subsequent to those in which the thefts occurred. Apparently the Department has felt constrained to do this in order to prevent hardships and injustice. These have been departures from the "ordinary" rule of attributing embezzlement losses to the year of theft.

This Treasury practice evidently stems at least in part from the special nature of the crime of embezzlement. Its essence is secrecy. Taxpayers are usually well aware of all the circumstances of financial losses for which tax deductions are allowed. Not so when a trusted adviser or employee steals. For years his crime may be known only to himself. He may take money planning to return

it and he may return it before there is discovery. Furthermore, the terms embezzlement and loss are not synonymous. The theft occurs, but whether there is a loss may remain uncertain. One whose funds have been embezzled may pursue the wrongdoer and recover his property wholly or in part. See *Commissioner* v. *Wilcox*, 327 U. S. 404. Events in the *Alison* case show the practical value of this right of recovery. A substantial proportion of the embezzled funds was recovered in 1941, ten years after the first embezzlement occurred. This recovery alone is ample refutation of the view that a loss is inevitably "sustained" at the very time an embezzlement is committed.

Whether and when a deductible loss results from an embezzlement is a factual question, a practical one to be decided according to surrounding circumstances. See *Boehm* v. *Commissioner*, 326 U. S. 287. An inflexible rule is not needed; the statute does not compel it. For years the Treasury has administered the tax law under regulations saying that deductions shall "ordinarily" be taken in the year of embezzlement. Ordinarily does not mean always.

We hold that the special factual circumstances found by the District Courts in both these cases justify deductions under I. R. C., §§ 23 (e) and (f) and the long-standing Treasury Regulations applicable to embezzlement losses. See *Boston Consolidated Gas Co.* v. *Commissioner*, 128 F. 2d 473; *Gwinn Bros. & Co.* v. *Commissioner*, 7 T. C. 320. Accordingly, the judgment in No. 79 is reversed and the judgment in No. 80 is affirmed.

*It is so ordered.*

Mr. Justice Douglas and Mr. Justice Burton dissent.