Henry Kraft Mercantile Company v. Commissioner.
Henry Kraft Mercantile Co. v. Commissioner
Docket No. 53327.
United States Tax Court
T.C. Memo 1955-208; 1955 Tax Ct. Memo LEXIS 128; 14 T.C.M. (CCH) 833; T.C.M. (RIA) 55208; July 26, 1955
*128 Losses: Embezzlement losses: "Not compensated for by insurance or otherwise." - The taxpayer's collection agent confessed in 1950 that he had "juggled" his accounts in the previous year. The loss was determined to be $13,875.73. The taxpayer brought suit against an insurer of a $10,000 indemnity bond and eventually settled out of court in 1954 for $5,800. In 1950 his agent delivered to him a second mortgage on his home for $4,000 and paid it in 1952. Since the amount of the indemnity bond plus the fair market value of the second mortgage exceeded the amount of the embezzled loss, held, that the loss was not deductible in 1950, the year of discovery, because the amount deductible should be the amount "not compensated for by insurance or otherwise." Gilbert Carter, Esq., 223 1/2 West *129 Cherry Street, Nevada, Mo., for the petitioner. Hunter D. Heggie, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $2,492.34 in income tax for the taxable year 1950. The question for decision is whether the Commissioner properly disallowed an embezzlement loss claimed for the taxable year. Findings of Fact Petitioner is a Missouri corporation engaged in the wholesale grocery business with its principal office in Nevada, Missouri. Its books were kept on a calendar-year basis on an accrual system of accounting and its income tax return for 1950 was filed with the collector of internal revenue for the sixth district of Missouri. In 1950 and for some years prior thereto petitioner had in its employ a salesman and collection agent, hereafter called the agent. In part his duties were to make collections and keep customers' accounts. In a written statement dated August 19, 1950, the agent confessed he had "juggled these accounts (meaning his collection accounts) around the last year." This was the first notice to petitioner of a possible defalcation on the part of the agent. The agent was not *130 certain of the amount of his default and gave no indication of the amounts he had taken from the collections he had made from various customers or the dates thereof. He thought the total was between three and five thousand dollars. Based on information obtained from customers, petitioner determined the agent had embezzled $13,486.31. The agent also withheld $389.42 in 1950 for the purpose of cashing checks for which he did not account to petitioner. On April 10, 1948, petitioner had purchased a $10,000 indemnity bond from the Hartford Accident and Indemnity Company (hereafter referred to as the insurer). The bond was for a period of three years and indemnified petitioner against loss of money or other property through any fraudulent or dishonest acts of its employees. Petitioner notified the insurer of the defalcation and in September 1950 agents of the insurer began an investigation of the claimed loss. Proof of the loss was furnished the insurer on the insurer's forms on December 21, 1950. The insurer acknowledged receipt of the forms by letter dated December 27, 1950, and stated that the claim would be looked into and the position of the insurer would be made known on completion *131 of the investigation. By letter dated January 10, 1951, the insurer wrote as follows to petitioner: "We were willing to overlook the defenses to this claim and adjust with you on the basis of the principal's admission, namely by paying the sum of $2500 for a full and complete release. In view of your refusal to accept our compromise offer, we have no other course to follow than to return the proof of loss you submitted with the schedules attached and deny liability based on (1.) Failure of the obligee to furnish a fair preponderance of evidence showing the principal to be responsible for the amount claimed by reason of his having committed dishonest acts. (2.) By entering into settlement with the principal without the surety's consent, you, as obligee, have automatically released the surety from any and all liability. "If you are able to obtain evidence within a reasonable time from this date to support the items which you are making claim for as being a loss to you through this principal having committed dishonest acts, then upon your presenting the evidence to this company we will give the claim further consideration. In the absence of further proof we must deny the claim *132 in full and do so herewith reserving all rights and defenses which we may now have or which may hereafter arise in the future and not limiting our defenses to those specifically mentioned above." Some time after January 10, 1951, petitioner retained an attorney to represent it on its claim against the insurer on the bond. The attorney advised vigorous prosecution of the claim because in his opinion there was a good chance of recovery. In 1951 or 1952 petitioner filed suit against the insurer for $10,000 damages plus damages for vicious delay in settlement of the claim. The case was settled out of court in 1954 for $5,800 and petitioner released the insurer from further liability. On October 5, 1950, the agent and his wife delivered a second deed of trust of $4,000 on their home as security to petitioner for the amount the agent said he had taken from petitioner. The deed of trust had a fair market value of $4,000. The mortgage was paid in 1952. The agent remained at his employment and received wages from petitioner until November 1952. Petitioner brought no criminal charges against the agent and made no attempt to recoup the defalcation from his earnings. Petitioner claimed *133 an embezzlement loss on its return for the fiscal year ended December 31, 1950 in the amount of $13,875.73. The statement accompanying the deficiency notice explained that the loss was not deductible for the reason it had not been determined that a loss had been sustained in the year 1950. Opinion TIETJENS, Judge: The loss here involved was discovered in 1950 through the agent's confession and petitioner seeks to deduct it in that year relying on Alison v. United States and United States v. Stevenson-Chislett, Inc. (decided together), 344 U.S. 167. This reliance is misplaced. While those cases do indicate that when embezzlement losses extend over several years the circumstances in a particular case may justify deductions in the year of discovery rather than in the years when the peculattions actually took place but were undiscovered, the principle announced has no application here. In the case before us petitioner not only held a bond of indemnity against loss in the amount of $10,000 in 1950, the year of discovery, but also took a $4,000 second mortgage from the embezzler as indemnity in that year, and the two amounts exceeded the claimed loss. The Commissioner *134 contends that these circumstances pose the question whether the loss was "compensated for by insurance or otherwise" under section 23(f) of the Internal Revenue Code of 1939. If it was, no deduction is allowable. No such question was in the Supreme Court cases referred to above. As early as Allied Furriers Corporation, 24 B.T.A. 457 this tribunal indicated: "* * * that where fire, embezzlement or other casualty occurs and is covered by insurance or otherwise, no deduction can be claimed for the year of the casualty, but that it is allowable for the year when the claim for compensation thereof is settled." In that case a burglary occurred in 1925. The taxpayer was protected by insurance. The insurer denied liability. Suit was brought and the claim was settled in 1928. The taxpayer sought deduction of the loss in 1928 and in sustaining the taxpayer the Board of Tax Appeals said: "The facts in the instant case show that in 1925 the petitioner was protected by an insurance policy against any loss from burglary. It could not reasonably have claimed any loss in its 1925 return from burglary. From its standpoint it was covered by insurance. When the insurer refused to *135 pay the loss, the petitioner in good faith brought suit against it for the recovery of the loss. The loss was sustained when the court held that the insurance company was not liable for the amount thereof. In a very practical sense the loss was sustained in 1928." Allied Furriers Corporation was followed in Rose Licht, 37 B.T.A. 1096. In Licht the taxpayer suffered a fire loss in 1931. It was covered by insurance. The facts did not show conclusively that the insurers disclaimed liability or that hope of recovery was too remote for the insured to conclude that he was covered by insurance in 1931. Part of the claimed loss was recovered in 1933 and it was held that the loss was deductible in that year rather than in 1931. Petitioner contends that Cahn v. Commissioner, 92 Fed. (2d) 674 establishes a different rule from Allied Furriers Corporation and Rose Licht, both supra. We do not so interpret the Cahn case. There a burglary loss was sustained in 1924 "but throughout the year 1924 and a part of 1925 the insurers denied liability." The claim was settled in 1925. The taxpayer deducted the full amount of the loss in 1924. The Commissioner adjusted the claimed *136 loss by the difference between the cost of the property stolen and the money received in the settlement. In Henry S. Cahn, 33 B.T.A. 786 the Commissioner was sustained. The appellate court reversed in Cahn v. Commissioner, supra.In so doing the court specifically refrained from defining the precise meaning of "compensated for by insurance or otherwise" but indicated the language must be given a "practical construction." The case before us differs from the Cahn case. Here there is nothing in the record to show that the insurer in the taxable year denied liability for the loss. It was not until the following year that the insurer did so. Even then its denial was qualified and willingness to consider further evidence to support the claimed loss items was evinced. Certainly it can not be said on this record, as the appellate court did in the Cahn decision that in 1950, the taxable year, "it would 'require a high degree of optimism' on the part of the taxpayer to discern in 1924 [1950] anything more than 'a remote hope'" that the insurers would repay the loss. It seems to us there could have been no reason why the taxpayer here should not have had every hope *137 of recovery on the bond in 1950. Petitioner's attorney had a high degree of optimism in 1951 and advised vigorous prosecution of the claim. Certainly there was nothing in the 1950 picture on which to base less optimism than in 1951 for there is nothing to show that the insurer had denied liability before 1951. Petitioner would have us interpret the word "compensated" as used in the statute to mean "recouped by the corporation or paid to it by way of restitution or indemnification." We have been cited to no cases where the word has been so construed, nor have we found any. The construction contended for is much too broad. We prefer to rest our decision on the facts before us. Petitioner in 1950, when the embezzlement came to light, was covered by an indemnity bond of $10,000. There is nothing in the record to show the insurer had in that year denied liability. In addition petitioner took from the embezzler in 1950 a mortgage having a value of $4,000 as security for the amount embezzled. On these facts we hold that petitioner has not shown that in 1950 the loss, whatever its amount, was not "compensated for by insurance or otherwise" and the loss claimed for that year must be denied. *138 See Charles D. Whitney, 13 T.C. 897; George M. Still, Inc., 19 T.C. 1072, affd. (C.A. 2) 218 Fed. (2d) 639. Decision will be entered for the respondent.