Pansy Propp v. Commissioner.
Propp v. Commissioner
Docket No. 48837.
United States Tax Court
T.C. Memo 1955-322; 1955 Tax Ct. Memo LEXIS 14; 14 T.C.M. (CCH) 1257; T.C.M. (RIA) 55322; December 9, 1955
Aaron E. Klein, Esq., for the petitioner. Robert J. Cowan, Esq., for the respondent. RAUM
Memorandum Findings of Fact and Opinion The respondent determined a deficiency in the income tax of petitioner in the amount of $193.60 for the calendar year 1949. The sole issue is whether the petitioner is entitled to a nonbusiness bad debt deduction for the year 1949, in the amount of $1,000, as limited by Section 117(d)(2) of the Internal Revenue Code of 1939. Findings of Fact The petitioner, a resident of Kingston, New York, filed her income tax return for the year 1949 with the collector of internal revenue for the fourteenth district at Albany, New York. On March 23, 1933, the *15 petitioner's husband committed suicide, leaving her with three minor children. She suffered a nervous breakdown and was bedridden for about a year. She has been very nervous and in poor health since that time. Her mother, Bessie Lunitz, and her father, Jacob Lunitz, who were living with her when her husband died, continued to live with her after his death. Bessie Lunitz died in September 1949 and Jacob Lunitz in January 1950. During the period of petitioner's illness Jacob Lunitz handled her affairs as she was unable to make decisions and little things irritated her. Petitioner's husband had left her a sizable personal estate, and she was from time to time pressured by her parents to make loans to members of her family. She was under the domination of her parents to a considerable degree. In 1933 Jacob Lunitz was engaged in business with his two sons under the firm name of Jacob Lunitz & Sons. Jacob Lunitz managed and controlled the business at that time and continued to do so until the time of his death. Prior to 1933 the business was successful and it also prospered during the years 1941 to 1946. A downward trend began after 1946 and at the time Jacob Lunitz died the condition *16 of the business was not good. In 1938 the business needed funds and Jacob Lunitz prevailed on the petitioner to make loans aggregating approximately $50,000 over a period of four or five years. Approximately $40,000 of these loans was subsequently repaid to petitioner. At the present time she is still receiving monthly payments from her brother, Harry Lunitz, who had guaranteed the repayment and operated the business after the death of his father. In 1937 petitioner's brothers, Michael Lunitz and Ben Lunitz, and her brother-in-law, Harry Josephson, began to operate a business under the name of Luntex, Inc. Neither petitioner nor her father or mother owned any interest in Luntex. Petitioner's parents exerted pressure upon her to make a loan to Luntex. At first petitioner refused, but after her parents agreed to guarantee repayment of the loan out of an insurance policy on her father's life payable to her mother as beneficiary she agreed to make the loan. She thereupon made a non-interest bearing loan of $16,000 to Luntex; it was not evidenced by any writing, nor was there any agreed time for repayment. The insurance policy, referred to above, was in the face amount of $60,000, but *17 petitioner never saw it. Luntex was in business only for a short time; it became insolvent and was liquidated on or about December 31, 1939. To the extent there was any liability on the part of Luntex to repay the $16,000 loan, such liability became worthless in a year prior to 1949. When it ceased operations petitioner asked her father about repayment of the $16,000, and he told her not to worry, that he still had the insurance policy, and that she would be paid out of the policy. After her mother's death in September 1949, she asked her father about the insurance policy and he told her that he was "very sorry"; that there was "no policy"; that sometime prior to the death of her mother he had borrowed on the policy up to its full value; that everything was "gone", and that he could not pay her the $16,000. In 1950, an attorney employed by petitioner made an unsuccessful attempt to recover the $16,000 from her father's estate. She has never received a repayment of the $16,000 or any part thereof. In petitioner's income tax return for 1949, she reported a loss of $16,000 resulting from a nonbusiness debt becoming worthless, and claimed a nonbusiness bad debt deduction in the amount *18 of $1,000. The claimed deduction was disallowed by the respondent. Opinion RAUM, Judge: We are convinced that petitioner made a loan of $16,000 to Luntex in 1939, which was guaranteed by her parents, such guarantee being based upon a $60,000 policy of insurance upon her father's life payable to her mother as beneficiary. Luntex became insolvent and was liquidated about December 31, 1939. Thereafter, petitioner looked to her parents and the insurance policy as a source of repayment. In 1949 her mother died, and her father disclosed to her for the first time that his prior borrowings upon the policy had stripped it of all value and that she would not recover on her loan to Luntex. He died several months thereafter. The circumstances in this case are unique. We are satisfied on the entire record that petitioner's loss growing out of her loan to Luntex was sustained in 1949. Although different statutory provisions may be involved, the problem here is closely related by reason of its unusual facts to the case of an embezzlement discovered by the victim in a later year where it is held that deduction may be taken in the year of discovery. See Alison v. United States, 344 U.S. 167. *19 We hold that the debt became worthless in 1949. Decision will be entered for the petitioner.