The ISMERT–HINCKE MILLING COMPANY, a corporation, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. KC–590.

United States District Court
D. Kansas.

Oct. 16, 1956.

Philip L. Levi, and Robert E. Rosenwald, Kansas City, Mo., and Joseph Cohen, Kansas City, Kan., for plaintiff.

William C. Farmer, U. S. Atty., Topeka, Kan., Milton P. Beach, Asst. U. S. Atty., Kansas City, Kan., and Anthony T. Dealy, Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., and Andrew D. Sharpe, Dept. of Justice,

Washington, D. C., were with them on brief), for defendant.

MELLOTT, Chief Judge.

This is a suit for refund of income and declared value excess profit taxes, alleged to have been illegally and erroneously assessed against the plaintiff and collected for the fiscal year ending May 31, 1946.

The facts admitted in the pleadings and the stipulations of the parties are, by this reference, so found. On the basis of evidence introduced at the hearing it is also found that the loss sustained by plaintiff and in issue here has not been compensated for by insurance or otherwise.

Summarizing somewhat sketchily the stipulated facts, plaintiff, which is a milling corporation organized and existing under the laws of Kansas, with its principal office and place of business in Kansas City, Missouri, had, in the course of its business operations, employed one Hinojosa, a citizen of Mexico, from 1937 until December 31, 1948 as director of its export department. Hinojosa was a broker, having his office in the Board of Trade Building in Kansas City, Missouri. For the services rendered by him for the plaintiff, he was compensated on a commission basis. His activities as director of plaintiff's export department were carried on in plaintiff's name and it was within the scope of his authority to carry on correspondence pertaining thereto with other brokers, factors and corporations abroad. He had been furnished a Spanish language letterhead of plaintiff on which he was identified as the director of its export department and letters written by him on behalf of plaintiff were so signed by him.

Hinojosa, during the same period of time, was also doing business under an unregistered trade name of "Pan-American Trading Company" (hereinafter Pan-American). During the taxable year, a Spanish corporation (hereinafter Orbea) with its principal office at Tangier, Morocco, through an agent, made inquiry of plaintiff concerning the purchase of a quantity of flour. The inquiry was referred to Hinojosa. After extensive negotiations, an agreement for the purchase of flour by Orbea was entered into with Hinojosa, acting on behalf of and with the authority of plaintiff. Following the writing of several letters and the exchange of telegrams, Orbea paid the sum of $30,000 through the Guaranty Trust Company of New York and the Commerce Trust Company of Kansas City, Missouri, the bank draft being payable to Pan-American in accordance with Hinojosa's instructions. The amount was acknowledged by Hinojosa as plaintiff's export director on its stationery; but he did not remit the amount to plaintiff. At a later time and during the taxable year, he misappropriated it and used it for his personal benefit.

The remittance had been made as a prepayment for 10,000 bags of flour. The flour was never delivered and Hinojosa represented to Orbea that its shipment had become impossible because of governmental regulations. Some years later plaintiff received actual notice that the sum of $30,000 had been transmitted by Orbea to Hinojosa under the circumstances briefly related.

In August of 1950, Orbea instituted suit against plaintiff to effect collection of the sum of $30,000 and interest thereon. Efforts to cause Hinojosa to pay that sum into court were unavailing. In the answer filed by plaintiff in that case it was denied that Hinojosa was its agent or that it was liable to Orbea for the money he had misappropriated. On October 14, 1953, after elaborate preparations had been made for the trial of the case, and pursuant to a release agreement entered into by the parties to that action, judgment in favor of Orbea and against the plaintiff here was entered for $20,000. Satisfaction of the judgment was acknowledged in open court.

Full information surrounding the transaction involving the $30,000 was not secured by plaintiff until after it had filed its answer in the action instituted by Orbea. In the meantime, Hinojosa had been charged with criminal man-

slaughter in Missouri in connection with a death which occurred on December 3, 1948. He was found guilty and sentenced to imprisonment, but appealed his conviction and was released on bond pending appeal. Upon affirmance of the judgment of conviction, his bond was forfeited, he in the meantime having fled to the Republic of Mexico.

Timely returns of income, excess profits tax and declared value excess profits tax were filed by plaintiff for the fiscal year ending May 31, 1946; but they did not reflect as an income item the $30,000 received from Orbea, nor did they reflect any liability to Orbea arising from the receipt of that amount. Plaintiff's books were kept upon an accrual basis. Upon recomputation of tax due for the fiscal year ending May 31, 1946, following the making of certain adjustments not now in issue, the amount so recomputed was paid and appropriate claims for refund were filed and disallowed. No question is raised in the instant suit as to the jurisdiction of the court or whether all appropriate preliminary proceedings have been had. A recomputation of plaintiff's tax liability for the year in issue will be necessary only in the event the court finds that the $30,000, or a substantial portion of that amount, should be deducted from gross income for that period.

The applicable section of the Internal Revenue Code is Section 23(f), 26 U.S.C.A. § 23(f) which allows, as a deduction from gross income, "losses sustained during the taxable year and not compensated for by insurance or otherwise." Finding has been made that the loss in issue has not been compensated for; so the only question before the court is when the loss was sustained.

Plaintiff contends that the loss was sustained when the theft or embezzlement occurred, which, it argues, under the stipulated facts, was during the fiscal year ending May 31, 1946. It places its chief reliance upon a ruling, promulgated by the Bureau of Internal Revenue in 1953 following decision by the Supreme Court of Alison v. United States, 344 U. S. 167, 73 S.Ct. 191, 97 L.Ed. 186 (Revised Ruling 183), in which it was stated that "generally" the previous policy of the department would be continued of limiting the deduction for a loss resulting from an embezzlement to the year or years in which such loss occurred. It was stated, however, that "an exception to that policy * * * [would] be applicable in those cases in which it is impossible from the facts and circumstances involved to identify the year or years in which the embezzlements actually occurred and to ascertain the amount thereof in such year or years. Likewise, in other special factual cases where the embezzlement is not discovered for many years because of the secret maneuvers of the embezzler and the facts reveal that undue hardship or injustice would result if the loss were allowed only in the years the embezzlement occurred, it is believed that the loss may properly be allowed in the year in which it is discovered and the amount thereof ascertained."

The language quoted in the preceding paragraph, it is urged in behalf of plaintiff, was "promulgated to take care of" only the exceptional or unusual cases where the statute of limitations had run or where the embezzlement had been of such a diabolical nature that it could not be broken down into years of occurrence. Neither being present here, it is contended the deduction must be allowed in the year of embezzlement.

The premise, it is believed, is unsound. A departmental ruling cannot have the effect of amending an act of the Congress. The revenue act limits the deduction to "losses sustained during the taxable year"; so the factual question here, as in the many cases which have been decided by the courts, is "a practical one to be decided according to surrounding circumstances. See Boehm v. Commissioner, 326 U.S. 287, 66 S.Ct. 120, 90 L.Ed. 78." Alison v. United States, supra [344 U.S. 167, 73 S.Ct. 192]. The liability must be fixed and certain, the loss actual and present, Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720, and the mere existence of liability is not

enough to establish a deductible loss. Burnet v. Huff, 288 U.S. 156, 53 S.Ct. 330, 77 L.Ed. 670. The terms loss and embezzlement are not synonymous; and, even as in some cases a portion of the embezzled funds may be recovered, so, as here the actual loss may be, not the total amount embezzled but only the amount actually out of pocket when the entire transaction is completed.

 Problems of accounting, discussed upon brief, naturally give a court, not particularly well-versed in such, some concern. Under an accrual system, the books and records should allocate income and outgo to "the year in which the right to receive, or the obligation to pay, has become final and definite in amount." Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 287, 64 S.Ct. 596, 599, 88 L.Ed. 725. Plaintiff, it seems, feels that while no entries were made upon its books during the taxable year reflecting the transaction now under consideration, it should now make entries upon its books for that year crediting $30,000 to cash and debiting $30,000 to embezzlement loss; and that entries for the year 1953 —which is still open—should be made, charging against the deferred income credit account the $20,000 paid to Orbea and transferring the $10,000 balance in the deferred income credit account to the current income account. Defendant contends—and confessedly its theory seems to be the sounder—that there was, in reality, but one transaction which resulted in loss to the plaintiff. Its liability to Orbea could have amounted to $30,000. Fortuitously, it settled the claim for $20,000. In this respect, therefore, the situation upon its facts is not unlike those in the Alison case, supra, in which the Supreme Court held that a recovery made in later years of a portion of the embezzled funds was "ample refutation of the view that a loss is inevitably 'sustained' at the very time an embezzlement is committed."

Other questions discussed upon brief, including whether the unfaithful broker was an agent or a trustee of the plaintiff and whether his act constituted an em-

bezzlement or a theft, need not be decided and are passed. The court is of the opinion and now holds that the plaintiff has not sustained its burden of proving that the defendant erred in denying the claim for refund. Judgment is therefore being entered in favor of the defendant.