**INTERSTATE FINANCIAL CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 5969.**

United States District Court
N. D. New York.

Feb. 24, 1958.

---

Caleb Candee Brown, Jr., Syracuse, N. Y., for plaintiff.

Theodore F. Bowes, U. S. Atty., Syracuse, N. Y., for defendant, Kenneth P. Ray, Asst. U. S. Atty., Syracuse, N. Y., of counsel; Charles K. Rice, Asst. Atty. Gen., James P. Garland, William A. Miner, Attys., Dept. of Justice, Washington, D. C., on the brief.

BRENNAN, Chief Judge.

This litigation presents the question as to whether the plaintiff is entitled to deduct on its income tax return, an embezzlement loss in the year of its discovery or in the years in which the actual embezzlement occurred.

The action is brought to recover the sum of approximately $45,000 with interest, alleged to have been erroneously paid by the plaintiff as income taxes, for the fiscal year ending June 30, 1952. The requisite preliminary procedures are not in question. The evidence is in no way in dispute.

The interpretation and application of Sec. 23(f) of the I.R.C. of 1939 (26 U.S. C.A. § 23(f) and Reg. 111, Sec. 29.43–2 of the I.R.C. to the particular facts of this litigation is the key to the problem presented to the court.

The statement of facts, as stipulated, will be adopted as the findings herein. Since they are somewhat lengthy, a concise résumé of same is set out below as a background of this decision.

The plaintiff taxpayer is a holding corporation, owning the stock of various subsidiary corporations, engaged in the business of making small loans. The Quaker State Finance Corporation of Scranton and Allentown Pa. is one of such subsidiaries. On June 11, 1952, the manager of Quaker State disclosed that commencing in the fiscal year ending June 30, 1949 and continuing through 1950, 1951 and 1952, through the medium of fictitious loans and forgeries, he had misappropriated or embezzled a large sum of money from the plaintiff. The proceeds of said fictitious loans were used for three purposes—(1) to make periodic payment upon said loans; (2) to make payment upon valid loans which had become in default; and (3) for his own purposes. The reason for the payment upon the fictitious loans is obvious. The payments made upon the valid loans was for the purpose of hiding the financial situation of the company, thereby avoiding an audit which might well have disclosed the fictitious loans.

The magnitude of the above operation was such as to indicate that the total gross embezzlement involved some 2,000 transactions and about $600,000, over

the four year period. The actual outstanding fictitious loans however were computed at $193,812.23. The amount paid by the manager upon the valid loans was $39,037.76. This amount should have been charged back against valid customer accounts, thereby reducing the amount of the loss represented by the amount due on fictitious loans as mentioned above. In addition, the plaintiff accrued the amount of $15,000 as a recovery from a surety bond conditioned for the honesty of its employees. This amount should likewise be deducted from the gross loss, mentioned above, leaving a net loss of $139,774.-47. The figures, as given above, are all agreed upon in the stipulation of facts. The amounts thereof and method of computation require no further discussion in this decision.

Upon the discovery of the loss by the plaintiff, claims for a tax refund for the years ending June 30, 1949, June 30, 1950 and June 30, 1951 were made and a tax return was filed for the year ending June 30, 1952. In each of the above documents, the loss was allocated for the particular year involved. There is no contention that the plaintiff's loss, thus allocated, was factual or actual. Necessarily, it was arbitrary, especially insofar as the amounts paid by the manager to keep the valid loans in a current position and the amount of the recovery on the bond for each year are concerned. The above amounts were computed simply upon the same percentage basis as the total fictitious loans for the year bore to the total gross amount embezzled.

The claim for refund for the year ending June 30, 1949 was denied because the taxpayer had previously executed a closing agreement for that year pertaining entirely to other issues. The claims for refunds for the years ending June 30, 1950, 1951 and 1952 were allowed. Checks were mailed to the plaintiff who is holding same subject to the disposal of this litigation.

At the time of the filing of the above claims for refunds, the case of Alison v. United States, 344 U.S. 167, 73 S.Ct. 191, 97 L.Ed. 186, had not been decided. The plaintiff, in filing such claims, recognized the rigid interpretation of Sec. 23(f), referred to in the above decision to the effect that if a deduction was to be had, it must be taken in the year in which the theft occurred rather than in the year the embezzlement was discovered and the loss determined.

Subsequently, following the Alison decision and the Revenue Ruling interpreting same (Rev.Rul. 183, 1953–2, Cum. Bull. 143), plaintiff filed an amended return for the year 1952, deducting the total net loss in the tax year ending June 30, 1952 and claiming a refund. The claim was denied and this suit was seasonably brought.

■ There is no question but what the I.R.C. of 1939, 26 U.S.C.A. § 23(f) authorizes the deduction of losses sustained during the taxable year. Prior to the decision of Alison v. U. S., supra, it was generally required by the Bureau of Internal Revenue that a loss by embezzlement must be taken in the year in which the embezzlement occurred. The rule was not inflexible. Circumstances, in some cases, required a different result, as in Boston Consol. Gas Co. v. Commissioner, 1 Cir., 128 F.2d 473. The decision in the Alison case, however, held that the question as to when a deductible loss results from an embezzlement is a factual question, a practical one to be decided according to surrounding circumstances. The decision also points out that embezzlement and loss are not synonymous. The embezzlement may occur at one time but the loss does not necessarily arise at the same time. It may well, as in this case, await the action of the wrongdoer who may return all or some part of the property embezzled to its rightful owner.

The approach to the problem as to when the loss occurred here and may be deducted by the taxpayer is concisely stated in Ismert-Hincke Milling Co. v. U. S., 10 Cir., 246 F.2d 754 at page 757 and in the cases cited therein. Following the rule of said decisions, leads conclu-

:sively to the determination that the loss here could not be actually determined in any year prior to 1952. Gross embezzlement for each single year has not been ·determined. Even if the net embezzlement for each year is determined, this does not establish the taxpayer's loss for that particular year, since the amounts paid by the manager, to keep the valid loans in a current position, are incapable of yearly allocation. To ignore such payments and discard any recovery upon the bond for any particular years makes the loss hypothetical rather than actual. "The loss 'must be actual and present.'" Burnet v. Huff, 288 U.S. 156 at page 161, 53 S.Ct. 330, at page 332, 77 L.Ed. 670. Hardship results to the taxpayer if the loss must be allocated yearly because not only the basis of computation of the yearly loss is unsound but the taxpayer will be foreclosed from recovery of any loss ·occurring in the fiscal year of 1949.

The bond in this case, referred to above, was increased $10,000 to $20,000 ·on March 18, 1952. This circumstance also makes the matter of the amount of ·the plaintiff's recovery thereunder a problem of impossible computation for the .years involved. All of the facts and circumstances disclosed here dictate that the rule of the Alison case, now embodied :in the regulations, is applicable.

█ Although not urged seriously as .a defense in this action, the effect of the plaintiff's prior attempts to allocate its loss to the fiscal years of 1949, 1950, 1951 .and 1952 and the effect of its filing of ·claims for refund have not been overlooked. This action in no way constitutes .an election or estoppel on the part of the ·plaintiff. The general policy of the Bureau of Internal Revenue prior to the Alison decision was that the loss was allowed only in the year in which the embezzlement occurred. At that time plaintiff had no choice of election. Plaintiff was not required to anticipate the decision in the Alison case. The compulsion of a policy of the Bureau cannot be considered as an election; neither does it ·constitute an estoppel.

Similarly there is no force to any argument that the plaintiff has chosen a particular year in which to deduct its loss. The amount of the loss and the amount of the recovery was determined in the fiscal year of 1952. All of this is disclosed in the agreed statement of facts and the taking of the loss in any year, other than in 1952, would seem to be entirely improper.

The statement of facts as stipulated by the party is adopted as the findings of fact of this court, and it is concluded (1) that the court has jurisdiction of the parties and the subject matter of this action; (2) that the plaintiff is entitled to judgment in accordance with the prayer of the complaint, the form and amount thereof to be agreed upon by the parties or settled before me on five days notice; and it is

So ordered.