**Passon v. Bailey**

*Morris Passon,* pro se.
*Richard A. Sprague,* for defendant.

DOWLING, *J.* March 18, 1983—Like the "fruit of the poison tree" the after effects of an ill-conceived lawsuit continue to reverberate. Though Mr. Passon's libel action against F. Lee Bailey has finally terminated after some 14 years[1], it has spawned further litigation on the issue of counsel fees and expenses, which we now address, confident that when it is finally resolved by the appellate courts some new sprout will branch forth. One is tempted to quote Oliver Cromwell in his remarks to the long Parliament of 1650, "Depart I say, let us have done with you. In the name of God, go."

Defendant's motion is based on the Judicial Code 42 Pa.C.S. §1726 and §2503, which provides for reasonable counsel fees to be included as taxable costs for:

"Any participant who is awarded counsel fees as a sanction against another participant for dilatory, ob-

1. Passon v. Bailey 292 Pa. Super. 604, 433 A.2d 560 (1981). (Per curiam with Cavanaugh concurring in result) Petition for allowance of appeal to the Supreme Court denied.

durate or vexatious conduct during the pendency of a matter."

"Any participant who is awarded counsel fees because the conduct of another party in commencing the matter or otherwise was arbitrary, vexatious or in bad faith."

Following a hearing, the court taxed costs against plaintiff in the amount of $735.34 and attorney fees in the amount of $62,138.00. Fees were sought in the amount of $98,234, but the court disallowed various charges as not having been sufficiently substantiated. It would appear that the dollar figure is not really an issue, since the bulk of it, some $51,000, was stipulated and evidence to the other figures was uncontradicted. Costs are not contested as such.

This case had its genesis on the 4th of July, 1958, when one Max Kravitz was murdered. His wife, Ethel Kravitz, was tried and convicted for the crime.[2] After some eight years in prison, she was paroled in 1966. Plaintiff, Morris Passon, was the decedent's and Ethel's brother-in-law, being the husband of Max's sister. Following her parole, Ethel Kravitz, through her then counsel, F. Lee Bailey, filed two separate Post Conviction Hearing Act petitions, which were ultimately dismissed.[3]

The instant action arose from allegations contained in these petitions, which in essence charged that Morris Passon was the real murderer of his brother-in-law, Max Kravitz, and had caused Max's wife, Ethel, to be wrongly convicted. The complaint, alleging conspiracy and defamation, contended that

2. 400 Pa. 198, 206, 161 A.2d 861 (1960), Cert. denied 365 U.S. 486.

3. 441 Pa. 79, 269 A.2d 912 (1970) 546 F.2d 1100 (1977).

there was an agreement to publish three libelous writings: the two PCHA petitions and an article in Philadelphia Magazine appearing in May of 1970 and authored by one Gaeton Fonzi.

Critical to the entire litigation, and of controlling significance in resolving the matter presently before us is the distressing situation of plaintiff's dual capacity of plaintiff-attorney. What we said some years ago in disposing of the post-trial motions has but been reinforced by plaintiff's defense of this proceeding. "He is both counsel and client and although an able and respected member of the legal profession, the intense personal nature of the subject matter of the litigation is such that he has understandably been unable to wear both hats."[4]

It should have been apparent to plaintiff, even before he instituted suit, that the contents of the PCHA petitions were privileged. As far back as 1907, our Supreme Court adopted the view that,

"All charges, all allegations and averments contained in regular pleadings addressed to and filed in a court of competent jurisdiction, which are pertinent and material to the redress or relief sought, whether legally sufficient to obtain it or not, are absolutely privileged. However false and malicious, they are not libelous. This privilege rests on public policy, which allows all suitors (however bold and wicked, however virtuous and timid) to secure access to the tribunals of justice with whatever complaint, true or false, real or ficticious, they choose to present, provide only that it be such as the Court whose jurisdiction is involved has power to entertain and adjudicate." Temper v. Fort, 219 Pa. 85.

---

4. 101 Dauph. 330, 331 (1979).

This principle has been reaffirmed in an unbroken line of cases. See Greenburg v. Aetna Insurance Company, 427 Pa. 511, 235 A.2d 576 (1967), and Binder v. Triangle Publications, Inc., 442 Pa. 319, 275 A.2d 53 (1971). In Bartow v. Felix, 250 Pa. Super. 262, 378 A.2d 927 (1977), the Superior Court stated, "any official papers filed with the Court . . . would be absolutely privileged." If this is not sufficient in two cases involving the same plaintiff-attorney, Morris Passon, and growing out of the same background, the Superior Court held that various pleadings were absolutely privileged.[5]

With respect to the article published in the Philadelphia Magazine, plaintiff after commencing this action took the depositions in February, 1972 of Herbert Lipson, Publisher; Allen Halpern, Editor; and Gaeton Fonzi, the Author, all of whom testified that Mr. Bailey had nothing to do with the story. Prior to the commencement of the trial on July 23, 1979, the court ruled that plaintiff was prohibited from offering any evidence of a libel or conspiracy to libel arising out of the filing of the PCHA petitions, or any evidence relating to newspaper articles published prior to the PCHA petitions, since there was no allegation in the complaint that defendant was responsible for the articles. Thus, when the trial began, plaintiff was restricted to introducing testimony on the single issue of whether or not Bailey conspired to publish a libelous article in the Philadelphia Magazine.

During the trial, which was terminated after two and one half days, plaintiff called only two witnesses. Gretchen Duncan, who testified unequivo-

---

5. Passon v. Spritzer, et al. 481, 482 October term 1977 (Superior Court, July 12, 1978 per curiam); Passon v. Spritzer, 227 Pa. Super. 498, 419 A.2d 1258 (1980).

cally that Bailey did not participate in any manner with her efforts to get the story published in Philadelphia Magazine, and defendant, F. Lee Bailey, who in essence stated that he had no knowledge that the magazine was going to write the article, and had nothing to do with it. In the light of this testimony, plaintiff was required to make an offer of proof as to his remaining witnesses, and when the offers did not support his cause of action a non-suit was entered. In affirming the Superior Court noted that the record did not contain "even a scintilla of evidence to support appellant's claim . . .", and agreed with the presiding judge that Mr. Passon was pursuing this litigation to use the trial as a public forum for proclaiming his innocence.

This same paranoia continued through the hearing on the present motion for counsel fees, when Passon, shedding the last visages of his role as counsel, took the witness stand and in narrative spurts, detailed his feeling about F. Lee Bailey and the attempts to involve him in Ethel Kravitz's murder. While it was Passon, the client, speaking, he was defending his role as Passon, the lawyer. Since Mr. Passon chose to represent himself we must hold him accountable as a member of the legal profession. His actions may be understandable as a client, but his conduct as a lawyer renders him liable for the relief sought.

Liability for reasonable attorney fees rises under the sections of the statute above quoted, when there has either been a bad faith, intentional delay of a case during pendency, or obdurate vexatious or arbitrary commencement or pursuit of an unreasonable, meritless, or groundless proceedings. See Prusik v. Alexander, 17 D. & C. 3d 166, 170 (1981); Montgomery, Minor, 29 Fiduc. Rptr. 360 (1979).

Vexatious is commonly defined as meaning "distressing" or intended to harass.[6] The verb "to vex" is commonly defined as meaning "to irritate or annoy by petty provocations."[7] As the legal terms of art, "vex" is defined as meaning "to harass, disquiet, or annoy; as by repeated litigation upon the same fact",[8] and "vexatious" is defined as meaning "without reasonable or probable cause or excuse." The Pennsylvania courts have characterized vexatious conduct as proceedings "instituted without sufficient grounds and serving only to cause annoyance" as where defenses offered by defendant present no argument which has not been "advanced, fully considered and definitely disposed of" in recent controlling appellate precedent. Santoro v. City of Philadelphia, 59 Pa. Commw. 114, 118, 429 A.2d 113, 117 (1980).

Obdurate behavior as grounds for award of attorney's fees has been found where defendant's answer, raising a meritless counterclaim forcing plaintiff to litigate the baseless counterclaim, evidenced defendant's stubbornly litigious posture. This despite the fact that the court specifically refused to hold or infer that defendant was acting in bad faith. Prusik v. Alexander, supra.

In a civil rights action, the United States Supreme Court awarded attorney fees and assessed them against plaintiff directly, reasoning that since it was permissible to award counsel fees against the party who litigated in bad faith, a court "certainly may assess the expenses against counsel who

6. Webster's New Collegiate Dictionary, at 1303 (1977 ed.)

7. Id., at 1302.

8. Black's Law Dictionary at 1736 (Revised Fourth Ed., 1968).

abused the judicial process." Redway Express v. Piper, 447 U.S. 752, 766 (1980). As noted in Stetson-Chislett, Inc. v. U.S., 98 F. Supp. 252 (W. D. Pa. 1951), the responsibility of an attorney is not to bring litigation into the courts on the basis of mere suspicion alone, but on the basis of legally admissible evidence. While an attorney may urge a position supported by the law or make a good faith argument for modification or reversal, the "lawyer is not justified in asserting a position in litigation that is frivolous." Boyer v. Hicks, 19 D. & C. 3d 300 (1981), quoting ethical consideration 7-4, Code of Professional Responsibility.

In Gould v. City of Philadelphia, 43 Pa. Commw. 186, 402 A.2d 708 (1979), the court awarded attorney's fees to the opponent under 42 Pa. C.S. §2503, where defendant filed an appeal to avoid the payment of taxes on the theory that he was not an individual doing business in the Commonwealth, where that issue had recently been decided against him in another similar case. In Santoro v. City of Philadelphia, supra, the court awarded attorney's fees to appellee where defenses raised by appellant were vexatious as they did not advance any arguments which had not been fully adjudicated and disposed of in recent controlling precedent. Id., at 117. See also, Shull v. Columbus Municipal Separate School Dist., 338 F. Supp. 1376, 1378 (N.D. Miss. 1972) (attorney's fees awarded against plaintiff where plaintiff acted contrary to controlling precedent established against plaintiff in another case in which same plaintiff was a party).

Although bad faith is not required where the party's conduct was unfounded, the record clearly discloses Mr. Passon's bad faith in bringing in and pursuing this action. He knowingly proceeded with litigation lacking a reasonable foundation solely to

proclaim from the courtroom his innocence of the murder of Max Kravitz. His preoccupation with this obsession and use of the libel proceedings as a forum for his own purpose cries out from the record. As the Superior Court stated,

"The (trial) court rightfully concluded that the appellant was using the vehicle of this trial to proclaim his own innocence of the murder of brother-in-law, Max Kravitz, and not to prove the alleged conspiracy between appellee to publish the alleged libelous Philadelphia Magazine article.

"A review of the offers made by the appellant convinced the lower court and convinces us that the appellant intended to call each of his prospective witnesses in an effort to prove his innocence of the death of Max Kravitz rather than to prove the existence of a conspiracy to publish an alleged libelous article. Appeal Op. at 6 and 8."