Mary O'Hara ALSOP, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 273, Docket 26679.

United States Court of Appeals Second Circuit.

Argued April 14, 1961.

Decided May 17, 1961.

Holt S. McKinney, Lady Lake, Fla., for petitioner.

Miss Melva M. Graney (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Earl J. Silbert, Attorneys, Department of Justice), Washington, D. C., for respondent.

Before MEDINA, MOORE and FRIENDLY, Circuit Judges.

FRIENDLY, Circuit Judge.

Petitioner is a well-known author, residing in Connecticut. She kept her records and filed her tax returns on a cash basis. She had a literary agent, named —somewhat inappropriately as things turned out—Rowe Wright. From January 1, 1942 to June 6, 1952, Rowe Wright received royalties aggregating $65,623.58 for petitioner's account from various foreign publishers. In five of the years Wright reported and remitted nothing to petitioner; in the other six she reported and remitted sums aggregating $8,580.88. The balance, $57,042.-70, she embezzled, without petitioner having known the payments had been received. None of the royalties so unreported and embezzled were ever returned by petitioner as taxable income.

In 1952, petitioner discovered that certain foreign royalties due her had not been received. She dismissed Wright and obtained a judgment against her for $46,962.98, representing embezzled royalties paid by an English firm. In 1953, petitioner obtained a second judgment for $10,079.72 against Wright; this represented royalties from publishers on the Continent that Wright had embezzled.

In petitioner's return for 1952, she deducted the 1952 judgment as a "Loss due to embezzlement and defalcation of funds by agent"; this resulted in a net loss for the year. In her 1953 return, as amended, she deducted the 1953 judgment, as well as a net operating loss carry-over from 1952. In her amended return for 1954, she claimed a further deduction of the net operating loss carry-over.

In 1954, petitioner recovered $10,879.-54 on account of the judgments. She did not include this as 1954 income.

The Commissioner issued a notice of deficiencies for 1952, 1953 and 1954. He disallowed the amounts claimed as embezzlement losses and the net operating loss carry-overs resulting therefrom, as well as a carry-back claimed for 1951 not directly here in issue. He also determined that the amount received by petitioner in 1954 in partial satisfaction of the judgments was taxable income of that year.

The Tax Court, 34 T.C. 62, sustained the Commissioner's determinations. It approved his disallowance of the deductions for embezzlement losses on the basis of its consistent holding "that a taxpayer may not take a loss in connection with an *income* item as distinguished from a *capital* item unless the income item has been previously taken up as income in the appropriate tax return."— meaning, as the Court explained, that an unreported income item has no "cost" and therefore no "basis" under § 113(a), hence has no "adjusted basis" under § 113(b), and hence affords nothing to deduct under § 23(i).[1] It sought to distinguish Bennet v. Helvering, 2 Cir., 1943, 137 F.2d 537, where this Court had reversed precisely such a holding of the Board of Tax Appeals, on the ground that "the court never considered the question whether the taxpayer there had any 'basis' for loss under section 23 (h) of the Revenue Act of 1934, which section is substantially the same as section 23(i) of the 1939 Code, supra." It sustained the inclusion of the $10,879.-54 received on account of the judgments in petitioner's income for 1954 on the ground that this "was a substitute for part of the royalties that had been embezzled during the years 1942 through 1952, no part of which had been reported by petitioner as income in those years."

Taxpayer's position is that Alison v. United States, 1952, 344 U.S. 167, 73

---

1. All section references are to the Internal Revenue Code of 1939 save when otherwise stated.

S.Ct. 191, 97 L.Ed. 186, sustains her right to deduct the embezzled royalties in 1952 when she discovered the embezzlement; and that the Tax Court's holding that she had a zero basis for these royalties defies this Court's decision in Bennet v. Helvering, supra. She concedes that if she is allowed to deduct the loss due to embezzlement, it would be proper to include the recovery of $10,879.54 in her income for 1954; on the other hand, she claims that if no deduction for the embezzlement is allowed, her partial recovery in 1954 of previous years' income cannot be so included.

The ground upon which the Tax Court placed its decision as to the embezzlement losses cannot be reconciled with Bennet v. Helvering, supra. The facts in that case, as found in the memorandum opinion of the Board of Tax Appeals, were that, in consideration of legal services in 1921, Bennet had received in that year stock having a value of $5,000, which, however, he failed to report as income. The stock having become worthless in 1935, he sought to take $5,000 as a deduction. The Board disallowed the deduction, citing as authority its statement in Ruth B. Rains, 1938, 38 B.T.A. 1189, 1196, that "a taxpayer can not take as a deduction a loss of a gain which has not been reflected in income," a rule which was said to prevail "irrespective of questions comparable to estoppel." In this Court taxpayer urged, as he had to the Board of Tax Appeals, (1) that in fact the stock had been reported as income for 1922; (2) that even if it had not been so reported, the stock had a basis equal to its value at the date of receipt, citing, among other cases, Salvage v. Commissioner, 2 Cir., 1935, 76 F.2d 112, affirmed Helvering v. Salvage, 1936, 297 U.S. 106, 56 S.Ct. 375, 80 L. Ed. 511; and (3) that he was not estopped to take the deduction. The brief for the Commissioner claimed the first contention to be disposed of by the Board's findings, of fact, discussed the second at length, and referred only obliquely to the third. This Court's opinion put the question as "May a taxpayer, who has received property, which was taxable as income when received, but on which he has innocently failed ever to pay any tax, deduct its loss in a later year when it becomes worthless?", 137 F.2d at page 538. By so stating the question, the Court implicitly rejected the taxpayer's first ground, and by answering it in the affirmative the Court necessarily rejected the Board's view that the taxpayer had no basis for the stock, even though the opinion discussed only estoppel. Moreover, apart from the authority of Bennet v. Helvering and of Salvage v. Commissioner, we are not disposed to hold that a taxpayer has no "basis" for unreported compensation for personal services, as in Bennet v. Helvering, or for royalties on literary property, as here.

Despite this Bennet v. Helvering does not carry taxpayer all the way to her goal. Petitioner was on a cash receipts and disbursements basis. Section 23(e) can hardly be read as permitting a deduction for the deprivation of income taxpayer has not received. Bennet v. Helvering presented no such question of lack of receipt; the omission there was simply of reporting.

 Normally, indeed, "receipt of income by an agent is equivalent to receipt by the principal and such income is either actually or constructively received by him," 2 Mertens, Law of Federal Income Taxation (1955), p. 19; Maryland Casualty Co. v. United States, 1920, 251 U.S. 342, 345, 40 S.Ct. 155, 64 L.Ed. 297. But this rule can hardly apply where the agent of a cash basis taxpayer spirits away income of whose receipt the taxpayer never knew. Cf. Stoumen v. C. I. R., 3 Cir., 1953, 208 F.2d 903, 906; Ismert-Hincke Milling Co. v. United States, 10 Cir., 1957, 246 F.2d 754. What Rowe Wright did was to transform taxpayer's accounts receivable from the publishers into a claim in tort against the agent. That this was an economic loss to taxpayer is undeniable; but it was not the kind of loss that would appear in a cash receipts and

disbursements system of income accounting.[2]

Alison v. United States, supra, does not fill the gap. There no one denied a loss had been sustained; the only question was whether it could be taken in the year of discovery as the Court held, or only in the year of occurrence as a more literal reading of the statute would have demanded. The record in one of the two cases there decided, Stevenson-Chislett, Inc. v. United States, D.C.W.D.Pa. 1951, 98 F.Supp. 252, shows that the embezzling employee had made proper entries of receipts of income in the accounts, which, at least inferentially, had been reported, only the piracy being hidden. The facts in Mrs. Alison's case, D.C.W.D.Pa.1951, 97 F.Supp. 959, are somewhat less clear. The thefts included, and presumably consisted predominantly of, principal; if any of them were of income for which the agent had never accounted, the record does not show this and the parties did not question, either in the District Court or in the Supreme Court, that taxpayer had suffered a loss. We find it difficult to believe the Supreme Court would have sanctioned a liberalizing of the statutory language as to the year when a theft loss is to be taken so as "to prevent hardships and injustice," 344 U.S. at page 169, 73 S.Ct. at page 192, in order to provide a deduction for theft of income of whose existence the taxpayer had never known and which she had never reported.

■ With respect to the $10,879.54 recovered in 1954, taxpayer's argument is that this represented income of the years when the royalties were received and is excluded from 1954 income under § 111 of the 1954 Code, 26 U.S.C.A. § 111, providing that "Gross income does not include income attributable to the recovery during the taxable year of a bad debt, prior tax, or delinquency amount, to the extent of the amount of the recovery exclusion with respect to such debt, tax or amount" since, if the embezzlement losses are disallowed, the recovery would come within the definition of "recovery exclusion" in paragraph (b) (4). If the first step in taxpayer's argument were correct, the second would follow; but it is not. These payments constitute 1954 income not because they are attributable to a "recovery" but because they became income to this cash basis taxpayer in 1954 for the first time.

Affirmed.

---

2. C. I. R. v. Goldberger's Estate, 3 Cir. 1954, 213 F.2d 78, reversing in part Adele Trounstine, 1952, 18 T.C. 1233, may be distinguishable as arising under the special provision concerning partnerships, in that case § 182(a) of the Revenue Act of 1932. It does not appear whether taxpayer there was on a cash or an accrual basis.