K. C. Bellows and Clarabel V. Bellows v. Commissioner.
Bellows v. Commissioner
Docket No. 7174-65.
United States Tax Court
T.C. Memo 1967-199; 1967 Tax Ct. Memo LEXIS 60; 26 T.C.M. (CCH) 978; T.C.M. (RIA) 67199; October 13, 1967
K. C. Bellows, pro se, 2840 Bremen St., Columbus, Ohio. Rodney G. Haworth, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined deficiencies in the Federal income tax of petitioners for the calendar years 1960, 1961, and 1962 in the amounts of $632.99, $665.09, and $1,044.07, respectively. After various concessions by *61 petitioners, two issues remain for our consideration: (1) Is the fair rental value of an apartment furnished to the managers of petitioners' apartment buildings deductible as an ordinary and necessary business expense? (2) Are petitioners entitled to a deduction for their payment of a judgment on a bank loan and the attorney fees in connection therewith? Findings of Fact General Petitioners, K. C. Bellows and Clarabel V. Bellows, husband and wife, legally resided in Columbus, Ohio, at the time of the filing of the petition herein. They filed joint Federal income tax returns for the calendar years 1960, 1961, and 1962 with the district director of internal revenue, Cincinnati, Ohio. Issue No. 1 During the taxable periods relevant herein, Clarabel Bellows owned two apartment buildings located in Sheridan, Wyoming. The buildings connected to each other and contained a total of ten apartment units. Nine of the apartments were available for lease on a month-to-month basis. The tenth apartment, consisting of seven rooms, was reserved for occupancy by a resident manager. During the years in controversy, this apartment was occupied rent-free by a retired couple. The couple was *62 responsible for the general day-to-day operation and maintenance of the buildings, the handling of rental arrangements, and the collection of rent. Other than their rent-free occupation of the apartment, they received no further compensation for their services. It was not a requirement of the couple's employment that they reside in the apartment. If they so desired, they could have lived in another dwelling in the immediate neighborhood. For each of the years in question, petitioners did not report on their Federal income tax returns the receipt of any income from the particular apartment occupied by the retired couple. Rental income from the apartment buildings of $5,308.24, $5,476.65, and $5,402.36 was reported in 1960, 1961, and 1962, respectively. Petitioners claimed a deduction of $1,080 in each year for rental value of the apartment occupied by the resident managers. Respondent has conceded that such amount represents the fair rental value. Issue No. 2 In 1951, petitioners obtained a nonsecured loan from the Bank of Commerce, Sheridan, Wyoming, pursuant to which an interest-bearing note in the amount of $3,152.59 was executed. The money was borrowed for use in the contracting *63 business in which K. C. Bellows was engaged at the time. By some time during 1952, Bellows had reduced the note to $2,940.05 but then encountered financial difficulties. He understood that, if he could settle with his other creditors, the bank would forgive his indebtedness. No written statement of such forgiveness was ever made, nor was the note formally cancelled. Petitioners made no further payments on the note until 1962, at which time suit was commenced against them by the Bank of Commerce to recover the outstanding principal balance of the indebtedness. Judgment was entered against petitioners, which they paid in 1962, in the amount of $5,392.62, including the outstanding principal balance of $2,940.05, interest accrued thereon of $1,401.14, and $1,050.43 for attorney fees. On their 1962 Federal income tax return, petitioners deducted $5,392.62 as a business expense. For the taxable year 1952, petitioners filed a joint Federal income tax return. On Schedule C of such return ("Profit [or Loss] from Business or Profession"), K. C. Bellows listed his principal business activity as "Former Contractor - No contracts in 1952." On the line labelled "Total receipts from business *64 or profession" was entered $2,946.75. The U.S. Information Return appended showed $361.75 in fees paid to K. C. Bellows by the Lith-I-Bar Company of Holland, Michigan. At the bottom of this same form, the following was written in longhand: H. V. George
$2,580.00
$2,946.75
The only deductions on Schedule C were $3,079.20 depreciation, $388.90 traveling expenses, and $26,240.08 described as "loss reported in 1951 return." Opinion Issue No. 1 In each of the years in question petitioners deducted the fair rental value of an apartment occupied rent-free by a couple who performed various managerial and janitorial services for two buildings owned by one of the petitioners. Respondent contends that such amounts are nondeductible on two grounds: (a) although furnishing the quarters may have been an "ordinary" expense, it was not a "necessary" expense within the meaning of section 212 [1], because it was not necessary for the couple to reside on the premises in order to perform their duties; and (b) because petitioners have not included in their gross income an amount equal to the rental value of the apartment. *65 We find respondent's first contention without merit. The managerial services performed herein, in exchange for the rentfree apartment, were directly related to the income-producing properties involved. A compensation status was clearly contemplated by the parties. We do not think that the "ordinary and necessary" test turns upon whether the renderers of the services are required as a condition of their employment to live on the premises. That inquiry would be relevant only if we were confronted, as we are not, with the question of whether the rental value constituted income to the resident couple. See section 119(2). It is enough that the services rendered bore a "reasonable and proximate relation" to the management of the income-producing property and the collection of income therefrom. Section 1.212(1)(d), Income Tax Regs.
We take a different view of respondent's second contention. It is clear that the fair rental value of property can support a deduction. Reynard Corporation, 30 B.T.A. 451 (1943) and 37 B.T.A. 552 (1938), appeal dismissed (C.A. 2, 1938); cf. Passailaigue v. United States, 224 F. Supp. 682 (M.D. Ga. 1963); *66 compare Mattie Fair, 27 T.C. 866 (1957); Prisilla M. Sullivan, 16 T.C. 228 (1951); see Neely B. Taylor, Jr., 45 T.C. 120, 125 (1965). This, however, does not end the matter. Concededly, petitioner Clarabel Bellows provided the apartment to the resident managers as compensation for their services. We must thus face the question, as respondent suggests, whether, as a result, Clarabel Bellows realized income and should be denied the deduction on the ground that such income was not reported on the returns. It has consistently been held that a cash basis taxpayer may not take a deduction for an item such as "unpaid wages, salaries, rents, and other similar items of taxable income which were never reported as income." Palmer Hutcheson, 17 T.C. 14, 19 (1951); see Mary O'Hara Alsop, 34 T.C. 606 (1960), affirmed on other grounds 290 F. 2d 726 (C.A. 2, 1961), and cases cited therein. In applying this principle, there has been some confusion as to whether the test was the fact of inclusion in income rather than the requirement *67 of inclusion. See discussion in Alsop v. Commissioner, 290 F. 2d 726, 728 (C.A. 2, 1961). We need not concern ourselves with this problem, however, since in this case the year of inclusion and the year of deduction is the same and is before us. Where property is used to pay for an item of deductible expense, the transaction gives rise not only to a deduction but also to the realization of income on such use of the property. United States v. General Shoe Corp., 282 F. 2d 9 (C.A. 6, 1960); International F. Corp. v. Commissioner, 135 F. 2d 310 (C.A. 2, 1943), affirming 45 B.T.A. 716 (1941); cf. John D. Riley, 37 T.C. 932 (1962), affirmed per curiam 328 F. 2d 428 (C.A. 5, 1964); compare J. K. Downer, 48 T.C. 86 (1967), with Clyde G. Tatum, 46 T.C. 736 (1966), on appeal (C.A. 5, Nov. 3, 1966). Petitioners herein have been allowed, as deductions against the rental income from the other nine apartments, all of the out-of-pocket expenses claimed by them with respect to the operation *68 and maintenance of the apartment buildings as well as full depreciation with respect thereto. If petitioner Clarabel Bellows had paid cash to the resident managers as compensation for their services and charged them an equal amount as rent, she would clearly have realized income and been entitled to an offsetting deduction. She should not be in a different position taxwise simply because she short-circuited the procedure by paying the compensation in the form of a rent-free apartment. Cf. Estate of Willis D. Wood, 39 T.C. 1, 7 (1962). Whether the situation is viewed as one requiring that the deduction for the fair rental value be offset by an equal amount of realized taxable income or simply a denial of the deduction, respondent's determination as to the rental issue must be sustained. Reynard Corporation, supra. In view of petitioners' concession as to the circumstances of occupancy of the apartment by the resident managers, we need not decide whether a different result would obtain if such occupancy had been essential to the proper operation of the incomeproducing properties, although we doubt that such would be the case. Cf. section 119(2). Issue *69 No. 2 Respondent also challenges a deduction taken by petitioners for payment made in 1962 on a judgment against them for the principal of a debt incurred in 1952 [2] and the attorney fees incurred in defending against the same. We are satisfied that the debt itself was incurred in connection with Bellows' contracting business. But mere attachment of a "business" label to a debt does not mean that its repayment will give rise to an allowable deduction. Normally, such repayment is simply a return of a sum which did not constitute an item of gross income. Petitioner claims, however, that such is not the case herein, because the debt was included in his gross income in 1952, the year in which he thought the debt was forgiven. The only evidence in support of this claim is petitioner K. C. Bellows' meager testimony that his bookkeeper must have included the amount of the debt in Schedule C of the 1952 tax return. [3]
*70 Under the circumstances, we are constrained to hold that petitioners have failed to meet their burden of proof. We find it unnecessary to reach the question of whether the result would be different had petitioner in fact included the amount of the foregiveness in his income for a prior year. This is particularly true, where, as is the case herein, petitioners apparently showed a substantial loss in the prior years above and beyond the amount of the forgiven debt, with the result that no tax was paid. Moreover, for aught that appears in this record, any decrease in such loss because of the includability of the forgiven debt did not deprive the taxpayer of any loss carry-forward or carry-back benefits in respect of other taxable years. Cf. Sections 108; 1311-1315; United States v. Little War Creek Coal Co., 104 F. 2d 483 (C.A. 4, 1939). The attorney fees, however, were paid and incurred in defense of a claim on a business debt. As such, they constitute ordinary and necessary business expenses and were properly deductible under section 162(a). The fact that petitioner was not engaged in the same business at the time of payment is not significant, inasmuch as such expenses *71 were the proximate result of such business. Cf. Waters F. Burrows, 38 B.T.A. 236 (1938); see Rev. Rul. 67-12, 1967-1 CB 29. In order to reflect agreed-upon concessions and the opinion of the Court on the issues herein, Decision will be entered under Rule 50. Footnotes
1. All references hereinafter will be to the Internal Revenue Code of 1954.↩
2. Respondent allowed a deduction for the amount of interest included in the judgment.↩
3. Bellows' testimony was confused as to where the includability of the item was reflected. At one point, he testified that it was included in gross receipts on Schedule C, an unlikely possibility in view of the correlation between "gross receipts" and the data on the appended Information Return. At another point, he testified that it was in an amount reflecting a loss carryforward from 1951.↩