JOHN C. GIORDANO and NANCY J. GIORDANO, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Giordano v. Commissioner
Docket Nos. 2287-73, 7202-73, 8177-73.
United States Tax Court
T.C. Memo 1977-95; 1977 Tax Ct. Memo LEXIS 349; 36 T.C.M. (CCH) 430; T.C.M. (RIA) 770095; March 31, 1977, Filed John C. Giordano, pro se. Curtis O. Liles, III, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioners' Federal income tax as set forth below: Docket No.
Year
Deficiency
2287-73
1968
$1,881.45
1969
887.14
8177-73
1970
714.56
7202-73
1971
4,777.42
*352 Some of the issues have been disposed of by the parties or decided in a prior action in this Court. [1] Remaining for our consideration are: (1) Whether petitioners are entitled to deductions for unreimbursed travel expenses incurred in connection with John Giordano's employment in excess of amounts determined by respondent; (2) whether petitioners may deduct certain casualty losses and expenditures for tips; (3) whether petitioners may deduct as a bad debt amounts allegedly due under an employment contract for unpaid wages and per diem; (4) whether petitioners are required to include in gross income all or any part of the amount received in a settlement in a grievance proceeding for unpaid wages and per diem; and [5) whether petitioners may deduct amounts expended for the benefit of a corporation, Organization of Organizations, Inc., as charitable contributions. *353 FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner John C. Giordano filed an individual Federal income tax return for the calendar year 1968. Petitioners John C. Giordano and Nancy J. Giordano, husband and wife, filed joint Federal income tax returns for the calendar years 1969, 1970 and 1971. [2] At the time of filing the petitions in this case, petitioners resided in Hialeah, Florida. *354 During the years here in issue, John Giordano (petitioner) was employed as a flight engineer by Modern Air Transport, Inc. In connection with his employment, petitioner traveled regularly within and without the United States and incurred expenses of travel, including meals and lodging. Modern Air Transport, Inc. reimbursed petitioner for some of these expenses. In 1968, petitioner was stationed temporarily in Berlin, Germany for two periods, April 25 to July 12 and August 28 to October 12. The parties stipulated that he incurred total travel expenses of $2,916 during those periods. Total reimbursements from petitioner's employer in 1968 were $888.58 which was for travel in the United States and outside of the city of Berlin in Germany. On his return for 1968, petitioner had reported total employee travel expenses of $3,233.83, reimbursements of $888.58 and a resulting deduction of $2,345.24. The parties stipulated that petitioner incurred travel expenses of $528.60 in 1969 that were not reimbursed by his employer. On their 1969 Federal income tax return, petitioners reported unreimbursed employee travel expenses of $840. In 1971, petitioner traveled away from home *355 in connection with his employment approximately 204 days. He spent January, February and March in Berlin, Germany on a temporary assignment. He incurred expenses during the 204 days of $1,843.93 for lodging, $1,570.50 for meals, $294.20 for taxi cabs, and $430.35 for miscellaneous travel expenses. In addition, petitioners incurred an expense of $484 in 1971 for meals for Nancy Giordano while she was in Berlin during her husband's temporary assignment in that city. While in Berlin, petitioners purchased an automobile which John Giordano used to drive to and from work. Total expenses incurred in maintaining and driving the car during January, February and March of 1971 included $76.66 for gas and $245.76 for repairs, insurance, licenses, a set of keys for Mrs. Giordano, and related expenses. Also, petitioners incurred a loss on the sale of the automobile in March of 1971, the difference between its purchase and sale prices, of $350. Petitioner received a reimbursement of $2,829.71 from his employer in 1971 in connection with his 1971 travel expenses. Of this amount, $2,315.25 related to travel within the United States and $514.46 related to overseas travel incurred outside of *356 Berlin. On their 1971 Federal income tax return, petitioners reported employee travel expenses of $6,092.76, reimbursement of $2,829.71 and a resulting deduction of $3,263.05. In 1968, John Giordano commenced grievance proceedings against his employer, Modern Air Transport, Inc. The grievance contained several allegations relating to failure to pay wages, per diem payments and travel expense reimbursements allegedly due under petitioner's employment contract. The parties have stipulated that the total claim was approximately $12,000 of which approximately $6,000 was a claim for unpaid wages and approximately $6,000 was a claim for unpaid per diem. The grievance proceeding was settled by agreement of the parties on October 26, 1971. Petitioner received $3,300 as consideration for the settlement in 1971. Petitioners never reported as income any amounts claimed in the proceeding as unpaid wages or the $3,300 received in the settlement. Petitioner John Giordano claimed a deduction of $4,527 on his 1968 return and petitioners on their 1971 return claimed a deduction of $6,933 as amounts due from Modern Air Transport, Inc. to John Giordano for unpaid wages and per diem under his *357 employment contract. These claimed deductions were listed as "uncollected debts" and "losses incurred in providing professional services," respectively, on the returns. These unpaid wages and per diem represented the same items claimed in Mr. Giordano's grievance proceeding against his employer, and he considered the settlement obtained in the proceeding to be a partial settlement of the bad debt. In 1968, 1969 and 1970, petitioners expended $50, $50 and $21, respectively, for tips not related to Mr. Giordano's employment or any trade or business. Petitioners deducted these amounts on their returns for those years. In 1968, Mr. Giordano deducted $10 and in 1969 petitioners deducted $12 on their Federal income tax returns as casualty losses. These were the total amounts of loss in those years arising from each occurrence. Petitioners were the founders and officers of Organization of Organizations, Inc. (the corporation), a corporation organized under the laws of Florida. The Articles of Incorporation stated the purpose of the corporation as follows: The aim and general nature of the business to be transacted by this corporation not for profit shall be to encourage, develop, *358 and promote, a responsible lawminded, orderminded, grass-roots democracy, for the purpose of constructive non-profit contribution, to both the members and our society. The aim of these articles of incorporation shall be to provide ample autonomous structure, of intra-related small group organizations, for the purpose of: experiencing, understanding, and developing, methods suitable for the promotion of responsible grass-roots democracy. Founded on and dedicated to: law, order, and democracy. And to encourage and promote, on an individual level, personal experiences in which by actual participation, members will demonstrate the importance and value of: good will when working in groups, tolerance when dealing with individual diversity, and trust when functioning under majority rule. And to encourage and provide various and ample levels of leadership, semi-independently engaged in community affairs, for the purpose of experiencing, understanding, and developing, the responsible leadership for working within a democratic framework, and for the social betterment of both the members and society. This corporation shall do all in its power to experiment, develop, and advance, diverse *359 autonomous democracy, suitable to small intra-related groups which are oriented toward constructive contribution to society; and said corporation not for profit, shall have, but not be limited to those powers authorized by section 617.021 of the Florida Statutes.
The by-laws of the corporation stated in part: Purpose - The primary aim of this organization shall be to establish unifying democratic ascension systems for personalized representation, and for the ascension of the best leaders and the best ideas. Petitioners applied for an exemption under section 501(c)(3), I.R.C. 1954, [3] for the corporation on February 10, 1970. In the cover letter to the application, John Giordano expressed the following justifications for classifying the corporation as "a scientific, educational and charitable organization": 1. SCIENTIFIC: We believe that the incorporation of this organization is in itself a useful and scientific experiment to determine the potential that a wide-area-communications-network can offer to our communities and to our nation. We will endevor [sic] towards providing an "operating test bed" for collaborated scientific research into *360 a pragmatic operating network, regarding its dynamics, i.e. varying structuring within the limits of our by-laws and correlating the resultant characteristic [sic] qualities. We believe that this scientific and pragmatic research into network dynamics may demonstrate its social value as a mechanism for socializing antagonistic community populations, and that by pioneering this test bed it will encourage and promote the assistance of outside institutions to collaborate in the proposed scientific examination, and which will subsequently gain the confidence of other interested parties to explore this area also. 2. EDUCATIONAL: Per part 4 of Article 6 of our by-laws we provided for the hiring of psychologists to develop (educate) this type of structure, and in the "purpose" of both our by-laws and our articles of incorporation we have provided orientation towards group involvement (educational) experiances [sic] for the understanding, and developing of responsible leadership which is a neglected educational area. Also thru the help of group dynamics we shall endevor [sic] to educate and improve the over-all efficiency of group decisions or problem-solving efficiency, as *361 it affects both groups and individuals. 3. CHARITABLE : Inter-woven throughout our articles of incorporation and our by-laws are numerous provisions and orientations towards the advancement of: scientific social psychology; educational and instructive group relations experiences [sic]; and towards: resolving the conflicts which arise between antagonistic community populations; and towards: bringing the diverse individual and his peer group into harmonious relations; and towards: easing the burdens of governments by improving or developing the grass roots public involvement and support for law and order. Noteworthy, all subordinate groups economic activities which do require the clubs administrative approval shall be judiciously manuvered [sic] towards exclusively tax exempt activities. We believe that much of our success will be dependant [sic] upon the governments desire to inspire and tolerate the development of alternative types of grass roots civic clubs which may seek to utilize the incentive system provided by personal tax exemptions. The application also contained the following "Statement of Proposed Expenditures for Non-Economic Items": It is conceivable *362 that on rare occasions that outright gifts might be given to demonstrate our leaderships attaitude [sic]. But primarily, administrative funds will be spent on development and advancement of small group networks and the other groups will concentrate on developing congeniality and charitable community programs or projects. This application was rejected by the Internal Revenue Service. On April 20, 1970, petitioners applied for an exemption under section 501(c)(4). This application contained the following statement of the corporation's purpose: To promote a democratic network of small groups working in unison to support social psychology i.e. research and engineering in group dynamics and especially network dynamics, and which will bring diverse and antagonistic community populations together by involving them in charitable community projects to allow the actual involvement experiance [sic] improve the various groups efficiency. It also contained a "Statement Describing the Purpose of Funds Expended for Other Than Services or Supplies" which stated in part: *363 All administrative funds will be spent primarily upon organizational development and the advancement of small group networks. It is conceivable that on rare occasions that funds might be spent to demonstrate a synetic leadership attitude, i.e. small outright gifts towards encouraging participation. Organization of Organizations, Inc. received a determination letter dated June 10, 1970, from the District Director of Internal Revenue in Atlanta, Georgia that concluded that the corporation was exempt from Federal income tax under section 501(c)(4). In 1969 and 1970, petitioners expended $494 and $80, respectively, for various activities of Organization of Organizations, Inc., including printing, postage, stationery, office supplies, advertising and contributions to other organizations. On their Federal income tax return for 1969, they deducted the $494 as "professional organizer expenses for non-profit club." On their 1970 return they deducted the $80 as a loss from a trust. In his notices of deficiency to petitioners relating to calendar years 1968 and 1969, respondent disallowed deductions claimed by petitioners in the amounts shown below: Deduction
1968
1969
Travel Expense
$1,032.24
$ 623
Alimony
4,600.00
4,160
Bad Debt
4,527.00
Tips
50.00
50
Casualty Loss
10.00
12
"Professional Organ-
izer Expense"
494
*364 In his notice of deficiency to petitioners relating to calendar year 1970, respondent disallowed deductions of $4,600 for alimony payments, $80 for "trust loss," and $21 for tips. In his notice of deficiency relating to calendar year 1971, respondent disallowed deductions for employee business expenses of $3,263, for bad debt loss of $6,933, for medical expenses of $448.12, for alimony payments of $4,160, and for home office expenses of $300. This deficiency notice also increased petitioners' income by $3,300 as "Additional Income Received for Services" and by $3,300.49 as "Wages." [4]
OPINION Traveling Expenses
Several of the issues before the Court relate to petitioner's traveling expenses incurred while away from home in connection with his employment as a flight engineer. There is no dispute that most of the expenses are deductible in nature. Rather, the parties have disagreed principally on the amount deductible in each of the years *365 here in issue. Mr. Giordano incurred traveling expenses, reimbursed or unreimbursed, of $2,916 in 1968 during the periods he was stationed temporarily in Berlin, Germany. He received $888.58 from his employer in 1968 as reimbursements for expenses incurred during the year. However, the record does not clearly show to which expenses these reimbursements applied. Petitioner's testimony was somewhat contradictory on this point. We note that petitioner's employer did not reimburse him for living expenses while in Berlin and that any reimbursements for expenses incurred during petitioner's Berlin assignments were incurred during flights away from that city. While it is not completely clear whether the $2,916 of expenses which the parties orally stipulated "John C. Giordano incurred * * * while stationed in Berlin, Germany" included expenses outside the city of Berlin, the reasonable inference from the record is that the stipulated amount did include such expenses. The record is unclear as to what portion of the $888.58 is reimbursement which Mr. Giordano received in 1968 for expenses in Germany, outside of Berlin. We find upon consideration of the record as a whole, including *366 the length of Mr. Giordano's temporary duty stay in Berlin, that $300 of the reimbursements was for expenses incurred by Mr. Giordano while traveling outside of Berlin. We conclude that this $300 was in reimbursement of a portion of the $2,916 of expenses incurred by Mr. Giordano during his assignments in Berlin in 1968. Therefore, petitioner is entitled to a deduction for traveling expenses in 1968 in the amount of $2,616. The parties have stipulated and we have found that petitioners incurred unreimbursed traveling expenses of $528.60 in 1969. Petitioners are therefore entitled to a deduction for those expenses in 1969 of $528.60. Petitioners kept a contemporary log of traveling expenses incurred in 1971 and produced at trial a summary chart of these expenses. These records reflect total traveling expenses of $5,295.40, and the record reflects that this amount was in fact paid by petitioners. However, one item of expense was $484 for meals for Mrs. Giordano while she was in Berlin with her husband. Petitioners have failed to establish any bona fide business purpose for Mrs. Giordano's presence in Berlin. Barring proof of such a purpose, these expenses are not deductible *367 by petitioners. Challenge Manufacturing Co. v. Commissioner,37 T.C. 650, 661 (1962). Also included in the total traveling expenses claimed by petitioners for 1971 was $245.76 incurred for repairs, insurance, licenses and related expenses other than gasoline for an automobile they owned while in Berlin. Petitioners have established no basis for deduction of these expenses other than as traveling expenses under sections 162 or 212. Consequently, these expenses to be deductible must meet the substantiation requirements of section 274(d), [5] particularly the requirements that petitioners substantiate the amount of the expense and its business purpose. Petitioners established that the automobile was used by Mr. Giordano at least in part for traveling to and from work while away from home in connection with his employment. However, the record shows that a set of keys for the automobile was made for Mrs. Giordano, indicating that she also used it. The record is totally lacking in information as to the use made of the automobile other than as transportation to and from work *368 by Mr. Giordano. Petitioners not only failed to provide adequate records or evidence corroborating their own statements regarding use of the automobile, they failed even to testify on this issue. Petitioners thus failed to substantiate the amount of the business use of their automobile or the amount of the $245.76 of repairs, insurance and related expenses allocable to such business use. They also failed to satisfy the requirements of section 274(d) with respect to these expenses. Consequently, petitioners may not deduct these expenses. *369 Another portion of the expenses for 1971 reflected by petitioners' records as traveling expenses was a claimed $350 loss on the sale of their automobile in March of 1971. Petitioners have conceded that there is no basis for their deduction of this loss, and therefore we find that petitioners were not entitled to this deduction in 1971. The remaining amounts reflected as traveling expenses in petitioners' records for 1971 were substantiated and were amounts expended solely as proper traveling expenses, including meals and lodging, while away from home in connection with Mr. Giordano's employment. These expenses total $4,215.64. However, petitioners may deduct only the amount of these expenses in excess of their reimbursements, which we have found to be $2,829.71. Petitioners are thus entitled to a deduction for traveling expenses in 1971 in the amount of $1,385.93. Tips, Casualty Losses and Miscellaneous Deductions
Petitioners' deductions for tips in 1968, 1969 and 1970 were properly disallowed by respondent. As we have found, these expenditures did not relate to any trade or business of petitioners, nor did they relate to any activity described in section 212. Petitioners *370 have advanced no other theory nor proven any facts entitling them to the claimed deduction. We find that these expenses were personal in nature and not deductible by petitioners. See section 262. In 1968 and 1969, petitioners deducted $10 and $12, respectively, as casualty losses. Petitioners made no claim that these losses were incurred in a trade or business or in a transaction entered into for profit, and we find from this record that they were not. Thus, petitioners are limited in their deduction by section 165(c)(3). Since we have found that the loss from each casualty did not exceed $100, no deduction is allowed petitioners for these losses. On brief, petitioners have asserted that they are entitled to certain additional deductions claimed in the amended return submitted by Mr. Giordano for 1968. However, petitioners have produced no evidence that any of the amounts claimed were in fact paid nor have they established any statutory basis for any such deductions. We find on this record that Mr. Giordano is not entitled to these asserted deductions. Bad Debt Deductions and Grievance Settlement
The treatment on petitioners' returns for 1968 and 1971 of their *371 claims against Mr. Giordano's employer and their treatment of the subsequent settlement were improper on this record.
The deductions for "uncollected debts" and "losses incurred in providing professional services" claimed in 1968 and 1971, respectively, related to unpaid wages and per diem which petitioners alleged to be due from Mr. Giordano's employer under his employment contract. The amounts claimed by petitioners were not included in income on their returns at any time, and all expenses to which the per diem could have related were deducted by petitioners, as previously discussed. Petitioners, cash basis taxpayers, may not deduct as either bad debts or losses amounts claimed as unpaid wages which have not been included in their gross income. Gertz v. Commissioner,64 T.C. 598, 600 (1975); Hutcheson v. Commissioner,17 T.C. 14, 19 (1951); section 1.166-1(e), Income Tax Regs. The amounts claimed as unpaid per diem must be treated identically, since petitioners have deducted the expenses to which the claims for unpaid per *372 diem relate. Thus, the deductions of $4,527 and $6,933, respectively, in 1968 and 1971 were properly disallowed by respondent. Petitioners received $3,300 in 1971 in settlement of Mr. Giordano's grievance proceeding. The parties stipulated that the settlement was based on claims of approximately $6,000 each for unpaid wages and for unpaid per diem under Mr. Giordano's employment contract. The evidence also shows that these claims related to Mr. Giordano's activities between 1968 and 1971, inclusive. Whether the amount received in the settlement is includable in petitioners' income depends upon its character, since as defined in section 61 "gross income means all income from whatever source derived * * *." Also, the character of an amount received in compromise of an action is determined by the nature and basis of the action. Henry v. Commissioner,62 T.C. 605 (1974); cf. Hort v. Commissioner,313 U.S. 28 (1941). Here, petitioners' settlement is based on claims *373 of two types, both includable in income on these facts. It is axiomatic that a claim for unpaid wages results in income from compensation for services. See Hodge v. Commissioner,64 T.C. 616, 619 (1975). Furthermore, any unpaid per diem claimed would relate to expenses already deducted by petitioners. This per diem must be included in gross income when received under the tax benefit rule. Cf. Weyher v. Commissioner,66 T.C. 825 (1976). Since petitioner's claims were based solely on items includable in gross income, we find that the full amount received in settlement, $3,300, constituted gross income when received in 1971. [6]
Charitable Contributions
In 1969 and 1970, petitioners expended $494 and $80, respectively, for the benefit of Organization of Organizations, Inc. They deducted these amounts *374 on their Federal income tax returns for those years. Petitioners attempt to justify these deductions as contributions to an organization described in section 170.Section 170(a) allows a deduction for any charitable contribution made within the taxable year, and section 170(c) defines "charitable contribution" as a contribution or gift "to or for the use of" an organization described in section 170(c)(2). [7]
*375 Organization of Organizations, Inc. received a letter determining it to be exempt from taxation under section 501(c)(4)[8] on June 10, 1970. An exemption under section 501(c)(4) does not entitle petitioners to a deduction, however. The prior application of the corporation for a determination letter under section 501(c)(3) had been denied. The stated purposes of Organization of Organizations, Inc. are reflected in the material quoted extensively in our findings of fact. While we find that these statements accurately *376 reflect the purposes for which the Giordanos organized the corporation, they alone cannot support a finding that the corporation is one described in section 170(c)(2). Nor has Mr. Giordano's own testimony established a basis for deduction. We cannot agree with petitioners that these statements and testimony describe an exclusive purpose for organizing the corporation that is religious, charitable, scientific, literary or educational in nature. Indeed, the purposes described are so vague and broad as to negate a finding of any exclusive purpose. Furthermore, even were we to hold that the corporation was organized for the purposes listed in section 170(c)(2)(B), we find that petitioners have not established that the corporation was operated exclusively for one or more of these purposes. Petitioners have provided practically no evidence at all describing the operation of the corporation.On this record, we find that petitioners have failed to establish that Organization of Organizations, Inc. was organized and operated exclusively for the purposes described in section 170(c)(2)(B) during 1969 and 1970. Thus, they failed to qualify for a deduction under section 170 for the amounts *377 expended during those years for the benefit of the organization. See Edgar v. Commissioner,56 T.C. 717, 754-55 (1971). Decisions will be entered under Rule 155. Footnotes
1. One issue raised by petitioners concerned deductibility of payments made by John C. Giordano to his former wife, Dorothy Giordano, in the amount of $5,200 in each of the years here in issue and deducted by petitioners as alimony. Respondent disallowed these deductions to the extent of $4,600 in 1968 and 1970 and $4,160 in 1969 and 1971. On September 18, 1974, respondent filed a motion for summary judgment with respect to certain issues and a hearing was held in Miami, Florida on December 2, 1974. In Giordano v. Commissioner,63 T.C. 462↩ (1975), appeal dismissed (5th Cir. Jul. 8, 1975), this Court granted summary judgment with respect to the alimony issue, determining the proper amount deductible.
2. Subsequently, John Giordano filed an amended Federal income tax return for 1968 dated February 27, 1973 and received by the Internal Revenue Service on March 1, 1973. Petitioners filed two amended joint Federal income tax returns for 1969, one dated March 8, 1971 and received March 18, 1971, and one dated February 27, 1973 and received March 1, 1973. Petitioners also filed amended joint Federal income tax returns for the years 1970 and 1971 dated February 28, 1973 and received March 5, 1973. The untimely amended returns were apparently not accepted by the Internal Revenue Service. The deficiencies asserted by respondent are based on the original returns filed. See generally Goldring v. Commissioner,20 T.C. 79, 81↩ (1953).
3. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
4. These two adjustments were each made on the basis of petitioners' receipt of their grievance proceeding settlement proceeds. Respondent has conceded that only a single adjustment of $3,300 can be made based on this receipt.↩
5. This subsection states: (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home). (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B), the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.↩
6. While petitioners have at times described the amounts claimed in their grievance proceeding as bad debts, it is clear that the provisions of sec. 111, relating to recovery of bad debts, do not apply on these facts. See Alsop v. Commissioner,290 F.2d 726, 729 (2d Cir. 1961), affg. 34 T.C. 62↩ (1960).
7. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. * * *
(c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * *
(2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. * * *↩
8. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. * * *
(c) List of Exempt Organizations.--The following organizations are referred to in subsection (a): * * *
(4) Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.↩